## THE STATE v. VIRGIL DALE, Appellant.

### Division Two, June 4, 1920.

**PLEA OF GUILTY: Misapprehension: New Trial.** Where a defendant has entered a plea of guilty to a felony under a misapprehension of his rights and has been misled by the prosecuting attorney to believe that if he would enter such a plea he would be paroled, whether the misleading was intentionally or unintentionally done, his motion for a new trial, based on such ground, should be sustained.

Appeal from St. Charles Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED.

*W. Neustadt* for appellant.

(1) Where officers of the law went to defendant and told him that all they wanted was to recover the stolen goods, and that if they could get them, it would end the matter, and defendant informed them where they were, and was convicted on this confession, the confession was involuntary, and the conviction would be set aside. State v. Hagan, 54 Mo. 192. (2) Confessions or disclosures made under any promise or encouragement of any hope or favor are inadmissible. Hector v. State, 2 Mo. 166, 22 Am. Dec. 454; State v. Hunter, 181 Mo. 316; State v. Jones, 54 Mo. 478. (3) Where once a confession has been obtained through influence, a presumption arises that as subsequent confession flows from the like influence, and such presumption must be overcome before the confession can be given in evidence. State v. Jones, 54 Mo. 478;

State v. Brown, 73 Mo. 631. (4) Where defendant and his counsel were led to believe by the words and acts of the judge that if defendant would plead guilty, he would be given the minimum sentence, and thereupon he did plead guilty and was given the maximum sentence, the court should have permitted him to withdraw his plea of guilty and enter in its stead a plea of not guilty. State v. Stephens, 71 Mo. 535; State v. Kring, 71 Mo. 551.

*Frank W. McAllister,* Attorney-General, and *C. P. Le Mire,* Assistant Attorney-General, for respondent.

(1) Motions for a new trial and in arrest of judgment must be filed before judgment and sentence is pronounced. State v. Dunnegan, 258 Mo. 376; State v. Rosenblatt, 185 Mo. 118; Morgan v. Keller, 194 Mo. 663; State v. Stevenson, 74 W. Va. 392; 2 Bishop's New Criminal Law, sec. 798; Secs. 5285, 5286, 5288, R. S. 1909. (2) The setting aside of judgment is largely discretionary with the trial judge, and, in the absence of an abuse of this discretion, refusal to set aside furnishes no basis for reversal. State v. Stevens, 71 Mo. 535; State v. Kring, 71 Mo. 551; 2 Bishop's New Criminal Law, sec. 798. (3) The trial court was without jurisdiction to set aside the judgment after the term at which same was rendered had expired. Kelley's Criminal Law & Practice (3 Ed.), sec. 447; 16 C. J. p. 1326; State v. Williams, 147 Mo. 14; United States v. Mayer, 235 U. S. 55.

WILLIAMS, P. J.—Defendant pleaded guilty in the Circuit Court of St. Charles County, to an information charging him with robbery in the first degree, in that defendant feloniously took seven dollars from the person of one Frank J. Bull, by force and violence to his person. Thereupon the court sentenced defendant to five years' imprisonment in the State Penitentiary.

At the time the plea of guilty was entered defendant was not represented by counsel, but afterwards and within four days defendant appeared by counsel and filed a motion for a new trial, setting up as a ground that he

had entered a plea of guilty upon a promise that he would be paroled by the court. Testimony was heard by the court upon this motion and the motion was overruled. Defendant thereafter duly perfected an appeal to this court.

The evidence heard upon the motion for a new trial was as follows:

SYNOPSIS OF TESTIMONY OF VIRGIL DALE:

"My name is Virgil Dale, age 23. I reside at 8453 Lowell, St. Louis, Missouri. I was employed at the Baden Car Shops. I was arrested with Alvin Meyer, charged with robbing Frank Bull, on the night of the 21st of February, in a saloon in St. Charles, by Sheriff John Grothe. After arresting me Mr. Grothe took me into a back room, adjoining the saloon and searched me, then took me outside of the saloon on to the street and had me turn my coat collar up, then had Frank Bull come and see if he could identify me as one of the men who had held him up and robbed him. Bull looked at me and said that he could not say that I was one of them. Then Mr. Grothe took me over and put me in jail. After I was in jail about one-half or three-quarters of an hour, Mr. Hensler, the prosecuting attorney there, came over to the jail and the sheriff came and got me and took me into a room in the jail and the sheriff and Mr. Hensler began asking me questions about the robbery. I told them I did not know anything about it, but they kept on questioning me about the robbery and I kept telling them that I did not know anything about it.

"Then they put me back in the cell and took Alvin Meyer out. After awhile they came and got me and took me back to the room again and told me I might as well tell them about the robbery as Meyer had made a statement that we had robbed Mr. Bull. Mr. Hensler said to me that if I would make a confession and say that I held up Mr. Bull and took money from him it would be easier for me. He said that he was my friend and that if I would say that I had committed the robbery and sign

a statement and plead guilty, the Court would parole me. After talking the matter over with him and the sheriti for quite awhile, I believed what each of them said to me, and signed the statement, and when I was brought into court I plead guilty, believing that I would be paroled by the court, as Mr. Hensler told me the night I was arrested I would be: but instead of paroling me they gave me five years in the penitentiary.

"Question by the Court: 'Weren't you represented by an attorney at the time that you entered a plea of guilty?'

"Answer by Virgil Dale: 'I did not have an attorney. They told me I did not need one. Mr. Hensler also told me there in jail that night that Mr. Bull did not want his name in court and that if I would plead guilty he would see to it that I was paroled.

SYNOPSIS. OF TESTIMONY OF JOHN DALE:

"My name is John Dale. I am the father of Virgil Dale. After Virgil was arrested and in jail waiting for trial, I went to see Mr. Hensler, prosecuting attorney, to see what Virgil was charged with. Mr. Hensler told me that it was highway robbery; that he had held up Frank Bull of St. Charles and robbed him of $7. I talked with Mr. Hensler about the case, and said that I would get a lawyer for Virgil, but Mr. Hensler said it was not necessary, the boy has plead guilty and you need not do it. He said he would go with me to the judge and see what could be done about it, and that we would have a talk with the judge about paroling Virgil.

"On the morning of the 18th of March [this was the day that Virgil's trial came up], I had a talk with Mr. Hensler, and he said the judge would be in on the 10:48 train, he supposed, and that we could see him; but Mr. Hensler said that he would see the judge and that everything would be alright, and I just relied on what Hensler said and did not get a lawyer for Virgil."

SYNOPSIS OF TESTIMONY OF MRS. ALLIE JACOBSEN:

"My name is Mrs. Allie Jacobsen. I went to see Mr. Hensler at his house and had a conversation with him about the trouble that Virgil was in. This was after Virgil was arrested and before they sentenced him to the Pen. Mr. Hensler told me that we did not need a lawyer for Virgil; that he had already made a confession to him about the robbery, but that he knew that Virgil was not a bad boy and that he would help him out of his trouble; that he would do all in his power for him; that it was all in his hands and that he would go to the judge. I am an aunt of Virgil Dale.

"I later had a conversation with Mr. Hensler at his office and he repeated about the same thing to me at his office that he had said to me at his house, and assured me that he would help Virgil out of the trouble, at the same time I talked with him at his office. I asked him again if we would need a lawyer for Virgil and Mr. Hensler said no, it was not necessary, it was all in his hands. This is the statement that he made to me and I thought he was telling me the truth about it."

SYNOPSIS OF TES9IMONY OF JOHN GROTHE:

"My name is John Grothe. I am Sheriff of St. Charles County. On the night of February 21st I arrested Virgil Dale, in a saloon and searched him and then took him outside and had Frank Bull come and see if he could identify him. Mr. Bull said it looks like the two boys, but he was not sure; then I took him over and locked him up in jail. After a short time Mr. Hensler came over to the jail and we took Dale out into a room and began to question him and he denied the charge of robbery. We then brought out Alvin Meyer and questioned him and he made a statement, and we then again brought out Virgil Dale, and told him that Meyer had told us all about holding up Bull, and that he might as well tell the truth about it. Then Dale said to me, 'If I tell you about it can I go home to-night, or can I get out on bond, and if I tell you will I be paroled?' I told him

I could not parole him, that was for the court to say; that it was too late for him to get out on bond that night. I told Dale I was his friend, but I did not tell him that if he would confess he would be paroled. I told him that I was his friend and was still his friend and would help him if I could.''

SYNOPSIS OF TESTIMONY OF OSMUND HENSLER:

"My name is Osmund Hensler. I am Prosecuting Attorney for St. Charles County. On the night of the 21st of February, 1919, I came from St. Louis and went over to the jail and had a conversation with Virgil Dale and questioned him regarding having robbed Frank Bull, on that night, of $7. Dale denied the robbery and said that he did not know anything about it. After talking with him for some time Grothe, the sheriff here, brought out Alvin Meyer and questioned him and he made a statement to us that they had robbed Frank Bull. We again brought Dale out and told him that he might as well tell what he knew about the robbery, as Meyer had told us all about it and had made a confession. Then Dale put his head on the table and asked me, 'Will I get out?' Grothe told him it was too late to get out that night. I did not say to Dale that if he would make a confession that he would be paroled by the court. I told him that I was his friend and that I would help him. I do not remember just all that was said there that night.

"I had a talk with John Dale in my office on the morning of the 18th of March. I told him that I would see the judge and see what could be done about the case, but I did not tell Virgil that if he would sign a confession he would be paroled. I don't remember all that was said there that night in the jail when we talked to Virgil. I did say to him that I was his friend.

"I had a conversation with Allie Jacobsen, at my house, a few days before Virgil's case came up and told her that I would do all that I could for the boy. I did tell her that I knew that he was a good boy, and had never been in any trouble before that I had ever heard of, but I did not tell her that I would have him paroled."

"I talked with John Dale, the boy's father, three or four times about the case, and I did tell him that I was in sympathy with him and I told the boy's father that I would do all I could for Virgil."

After carefully reviewing the foregoing testimony offered upon the hearing of the motion for a new trial we are of the opinion that defendant at the time of entering a plea of guilty was laboring under a misapprehension as to his rights and that he had been misled by the conversations which he had had with the prosecuting attorney. We do not mean by this that the evidence shows that the prosecuting attorney wilfully misled the defendant, but what we do mean to say is that we think the evidence tends strongly to show that the defendant was in fact misled by what occurred.

It is immaterial whether the misleading was intentionally or unintentionally done. The material inquiry is: Was the defendant misled or under a misapprehension at the time he entered his plea of guilty?

While it may be true as stated by the prosecuting attorney that he did not in so many words tell defendant that if he would make a confession he would be paroled, yet we think the statements made by the prosecutor to the defendant were such as did cause him to believe that he would be paroled if he entered a plea of guilty.

Under such circumstances the judgment should not be permitted to stand. The rule to be here applied is fully discussed in the early case of State v. Stephens, 71 Mo. 535. In that case the court in reversing and remanding a judgment of the trial court in refusing to grant a new trial on the ground that the defendant had been misled into entering a plea of guilty said:

"Viewing the matter, then, in either light, we fee' constrained to say that it would better have comported with the proper exercise of a sound judicial discretion had the special judge permitted the withdrawal of the plea of guilty and the entry in its stead of the usual plea. The law is not composed of a series of snares and pitfalls for the unwary, neither does it favor what Judge BLISS

terms snap judgments. . . . Courts have always been accustomed to exercise a great degree of care in receiving pleas of guilty in prosecutions for felonies to see that the prisoner had not made his plea by being misled, or under misapprehension or the like.''

The judgment is reversed and the cause is remanded. All concur.