THE STATE v. HOWARD E. HARE, Appellant.—56 S. W. (2d) 141.

Division Two, December 14, 1932.

708

*Donald E. Lyons* and *Davis Haskin* for appellant.

*Stratton Shartel,* Attorney-General, and *Denton Dunn,* Assistant Attorney-General, for respondent.

COOLEY, C.—The two above styled cases were filed in the Circuit Court of Jackson County at the same time against the same defendant and were conducted substantially as one case. Both are prosecutions for bigamy. Pleas of guilty were entered by defendant to both informations at the same time and the court assessed the maximum penalty, five years in the penitentiary, in each case, the sentences to run consecutively, making ten years in all. Defendant filed motions for new trial, also verified motions to set aside the judgments and for leave to withdraw his pleas of guilty which, after a hearing, the court denied and defendant appealed in both cases. The two cases have been briefed, argued and submitted together in this court. The facts and record in the two cases are so interwoven that they can best be treated in one opinion.

Defendant married Helen Ebbers at Minneapolis, Minnesota, in 1923. Two children were born of that marriage. Defendant and his said wife lived together three years when they separated and he came to Kansas City, Missouri. In August, 1930, defendant married Martha Schulz. In February, 1931, he obtained a divorce from his wife Helen. On December 19, 1931, he married Esther Lou Foss. The foregoing facts were furnished by defendant to the assistant prosecuting attorney before whom he was taken when arrested and were by that officer reduced to writing and signed by defendant.

The informations to which defendant pleaded guilty were bottomed upon Section 4258, Revised Statutes 1929, declaring it bigamy for any person having contracted a bigamous marriage in another state to cohabit in this State with the person with whom such bigamous marriage was contracted. The information in case No. 31789 charges defendant with bigamy in his marriage to Esther Lou Foss, it being

charged that he then had a lawful wife, to-wit, Martha Shulz Hare. The information in case No. 31790 charges bigamy in the marriage to Martha Schulz, the first wife, Helen, being still alive and undivorced.

Defendant was arrested about midnight of December 30, 1931, at whose instance is not shown but probably that of Gus Foss, a brother of Esther Foss Hare who had that evening become aware of defendant's tangled matrimonial affairs. He was kept in custody by the police without opportunity to consult counsel, until about 9 or 9:30 A. M., December 31, when he was taken to the office of T. A. J. Mastin, assistant prosecuting attorney, where he was questioned by that officer and his written statement above referred to was obtained. The statement was as follows:

"My name is Howard Hare. I am 29 years of age and the first time I was married was in 1923 to a girl by the name of Helen Ebbers. I married her in Minneapolis. I lived with her three years and have two children by her. They are now living in Quincy, Illinois, with her father. The last time I saw her was in May in Quincy. I have been divorced from my first wife since February, 1931. I got the divorce under my right name and an attorney by the name of Sprinkle obtained my divorce for me.

"I then married a girl by the name of Martha Schulz in August, 1930. This was before I was divorced from my first wife. I knew Martha Schulz about two years before I married her. She did not know anything about my having another wife. I then married Esther Foss on December 19th, 1931, at Merriam, Kansas. I had a wife at that time. When I married Esther Foss I only had one wife. I married Martha Schulz in Kansas City, Kansas and was married by a Lutheran Minister by the name of Pooker.

"I was married to Esther Foss in Merriam, Kansas by a Probate Judge."

He also signed the following:

"Waiver. I, the undersigned, hereby waive my right to a preliminary hearing before a Justice of the Peace and right to consultation with friends and attorney, but desire to be filed on direct in the criminal court where I will enter a plea of guilty to the charges filed against me. (Signed) Howard Hare."

Armed with said written statement and waiver Mr. Mastin took defendant from his office to the courtroom, filed the informations which he had prepared while defendant was in his office, informed the court that defendant desired to plead guilty and the pleas were entered of record. Mr. Mastin recommended and the court thereupon assessed the maximum punishment in each case and sentenced defendant accordingly in both cases, specifically ordering that the sentences should run consecutively. Thus by judgment of the court as

well as by force of the statute, Section 4456, Revised Statutes 1929, the two sentences do not run concurrently but are cumulative.

Defendant's motions for new trial and to set aside the judgments and permit withdrawal of the pleas of guilty were filed January 2, 1931. On January 7 the court heard evidence upon the motions to vacate the judgments and permit withdrawal of the pleas. The motions and the evidence thereon are identical. There was but one hearing, the two cases being proceeded with together as they had been theretofore.

In defendant's said motions he stated in substance the facts and dates of his marriages and of his divorce from his wife Helen; that he was arrested about midnight, December 30, held in custody by the police until the next morning when he was taken before Mr. Mastin to whom he related the facts; that Mr. Mastin informed him that under the statute he was guilty of bigamy in his marriage to Esther Lou Foss as well as in that to Martha Schulz and advised him to plead guilty, and in that connection told him his "chances would be better with the court" by pleading guilty than if he should be tried before a jury; that, believing and relying upon such information and advice he pleaded guilty to both informations, whereupon the court asked Mr. Mastin his recommendation as to the punishment and the latter advised the court that the prosecuting attorney's office recommended a sentence of five years' imprisonment in each case; that he (defendant) did not have the benefit of counsel and was not advised that he was entitled thereto, and was given no opportunity to consult with an attorney or with a friend; that he pleaded guilty through mistake and because of the advice of the assistant prosecuting attorney and his belief that said attorney had correctly advised him as to the law and was led by said attorney to believe that he would receive lighter sentences if he pleaded guilty; that he was not guilty and had a "valid, legal and meritorious defense" to the charges (without stating it); that the court entered the judgments without being fully informed as to the facts and the law and that the sentences were excessive and not warranted by the law or the facts.

Defendant's testimony at the hearing tended to sustain the allegations of his motions except that he did not testify to any facts showing that he was not legally guilty of bigamy in marrying Martha Schulz and thereafter cohabiting in this State with her, as he admitted having done. He further testified that when he married Martha Schulz he had filed suit for divorce from his wife Helen but the suit had not been tried; that he and Martha had separated (it is not shown why) in March, 1931, following his divorce in February. The record of the divorce was introduced, showing a divorce granted to defendant from Helen Hare, February 5, 1931. He further testified in substance that when he signed the waiver of a preliminary hearing

and the right to consult an attorney or friend he did not fully understand its import nor his right to a preliminary and to have counsel; that it was placed before him and he was told to sign and did so; that nothing was said to him about his right to consult counsel or friends; that when brought before the court he was not asked by the court whether or not he desired to plead guilty; did not recollect that question being asked him by anyone; that the court asked him no questions. He testified also that he had regularly contributed to the support of his children, furnishing their chief support.

The testimony of Esther Foss Hare tended to corroborate that of defendant in most particulars relative to the latter's arrest and the events and circumstances following it.

Mr. Mastin testified in substance that he informed defendant he was entitled to a preliminary hearing and the right to consult with friends and attorney; that defendant signed the waiver voluntarily and understandingly; that he did not tell defendant, as the latter had testified, that if he said nothing antagonistic to the court his chances would be better and he would receive more consideration by pleading guilty; that in the courtroom both defendant's written statement and waiver were read to the court and he (Mastin) stated to the court in defendant's presence ''that the defendant had been made aware of all his rights and privileges . . . relative to a preliminary hearing and the consultation with friends and attorneys, and as evidence of his desires and wishes in the matter had signed this statement (waiver);'' that defendant was then asked if the statement just made to the court (by Mr. Mastin) was the truth, to which he replied: ''Yes;'' that he (Mr. Mastin) then read the ''charges'' (informations?) to defendant and asked him whether he wanted to plead guilty or not guilty and defendant said he wanted to plead guilty.

It appears fairly clear from the testimony of Mr. Mastin and from statements made from the bench in the course of the hearing on the motion that the judge did not himself ask defendant when the pleas of guilty were entered whether he wanted to plead guilty or any questions at all, but that whatever questions were asked defendant were asked by Mr. Mastin in the presence and hearing of the court. Defendant was not asked to make and did not make any statement except to answer Mr. Mastin's questions as above shown. The court, however, indicated that Mr. Mastin read to the court defendant's written statement and asked defendant if it was true and defendant said it was. Mr. Mastin testified that his recommendation as to punishment when the pleas were entered had been *and still was* that defendant ''should get ten years, five years on each charge.'' He did not deny having informed defendant that under the law he was guilty on both charges.

Immediately upon the conclusion of the evidence the court over-

ruled defendant's motions. Defendant in due time filed applications and affidavits for appeals which were allowed. The court fixed the amount of appeal bonds at $10,000 in each case, which defendant was unable to give. Subsequently this court, on defendant's application, reduced the appeal bonds to a total of $6,000 for the two cases.

I. It is within the judicial discretion of the trial court to permit a plea of guilty to be withdrawn. The action of the court in refusing to permit withdrawal of such plea is reviewable. [State v. Stephens, 71 Mo. 535; State v. Kring, 71 Mo. 551; State v. Dale, 282 Mo. 663, 222 S. W. 763.] The question here is, did the court abuse its discretion in refusing to set aside the judgments and permit withdrawal of the pleas of guilty? As to case No. 31789, in which defendant was charged with bigamy in marrying and thereafter cohabiting in this State with Esther Lou Foss, the question clearly must be answered in the affirmative. That marriage was valid and defendant committed no offense in entering into it. His first marriage, that to Helen Ebbers, had been dissolved by divorce. The second, that to Martha Schulz, was void and constituted no legal obstacle to his marriage with Miss Foss. [Sec. 2975, R. S. 1929; State v. Wilson, 312 Mo. 84, 278 S. W. 679.]

The Wilson case is in point and in connection with Section 2977, Revised Statutes 1929, settles this proposition beyond cavil. By the latter section common-law marriage which, prior to the amendment of that section in 1921, had been recognized in this State, was abolished. So it cannot be maintained that a common-law marriage between defendant and Martha Schulz existed because of their continued cohabitation as husband and wife for some time following defendant's divorce from his wife Helen. Defendant pleaded guilty in the belief, induced by the assistant prosecuting attorney's statement to him, that under the law he was guilty on that charge when in fact he was not guilty. Probably the prosecutor in advising defendant and the court in accepting defendant's plea and later refusing to permit its withdrawal misconstrued the statute making a bigamous marriage *void*, not merely voidable, and overlooked our decision in State v. Wilson, supra, so holding. But that defendant was misled cannot be doubted and it is immaterial that the misleading may have been unintentional. [State v. Dale, supra.] Under such circumstances that judgment cannot be permitted to stand.

II. A more difficult problem is presented in case No. 31790, in which defendant is charged with bigamy in his marriage and cohabitation with Martha Schulz. According to his written statement which was before the court when his plea of guilty was entered and as well his testimony at the hearing of his motion to withdraw the

plea, he appears to be legally guilty of that charge. If that case had been filed and presented alone, unconnected with and unaffected by the other charge, of which the prosecuting attorney and the court seemed to consider defendant also guilty, we should be inclined to uphold the court's action in refusing to permit withdrawal of the plea, notwithstanding the severity of the sentence. The court's ruling on defendant's motion and remarks from the bench during the hearing indicate that the court found against defendant's contention that he had been misled. Ordinarily where the facts are disputed and the evidence conflicting such a finding would be taken as conclusive of the facts, at least unless clearly against the weight of the evidence. But this case presents unusual and peculiar features. If we should assume that the assistant prosecuting attorney and the court knew *and had in mind* that defendant was not guilty on one of the charges and with such knowledge in mind the former, after assuring defendant he was guilty, recommended and the court assessed the maximum punishment on that charge, it would certainly indicate prejudice such that defendant could not have received fair and *judicial* consideration in the other case which was submitted and determined at the same time. We shall not so assume nor do we mean to impute to either official improper motives. But the fact remains that the two charges were preferred and considered together, virtually as one proceeding, and that defendant was indubitably misinformed and misled into believing himself guilty and pleading guilty as to one of them. What effect, if any, that may have had in inducing his plea of guilty to the other charge we cannot know. Perhaps defendant himself could not really know. He said in effect at the hearing that he would not have pleaded guilty had he been fully informed as to the law and his rights. He was confronted with two charges on both of which he was led to believe he could and would be prosecuted and convicted. Whatever may have been said to him about the likelihood of his receiving more favorable consideration in the matter of punishment if he pleaded guilty, it is certain defendant was not forewarned that the prosecuting attorney would ask the maximum penalty in both cases; and it can hardly be doubted that the thought was in some way suggested to him or at least was in his mind that unless he pleaded guilty he would have to face a jury or two juries on two charges, both of which he then believed could be established. Who can say what effect that thought may have had upon him, perturbed in mind as he must have been. And he was given short shrift. Less than twelve hours elapsed from the time he was arrested and confronted with these two charges until he was sentenced thereon, during all of which time he was in the custody of officers. And whether or not he could have had the benefit of consultation with or advice from friend or friendly attorney, he did not have it. We do not say that these circumstances alone, in an ordinary case, would justify a holding that

the trial court abused its discretion in refusing to permit withdrawal of the plea of guilty. As we have pointed out, we have here an unusual situation.

In fixing the punishment and refusing to permit withdrawal of the pleas of guilty the court, no doubt, inadvertently had in mind that defendant was guilty of two similar crimes. Had defendant been charged with but the one offense of which he was guilty, with no prior charge of law violation, bad character or other circumstances of aggravation appearing (and no such circumstances were suggested), it seems to us hardly likely that he would have been given the maximum sentence of five years imprisonment in the penitentiary for an offense for which the statute permits a punishment as low as a $500 fine.

The learned Assistant Attorney-General who briefed the case here, himself a former circuit judge, conceding that case No. 31789 should be reversed, also candidly suggests the reversal and remanding of case No. 31790. He says in his brief:

"We are aware that this court holds that punishment on pleas of guilty rests entirely in the trial court's sound discretion. [State v. Sublett, 318 Mo. 1142.] But the question arises here whether his discretion would be soundly exercised when he was misled as to the number of legal offenses committed and evidently aroused thereby to the limit of giving two maximum sentences of five years each and fixing the appeal bonds at $10,000 in each case, so that this court had to be called upon to reduce the same to a far less and more reasonable amount."

He further pertinently suggests consideration of the question "whether the defendant may not be fairly entitled to a reversal and remand of the case in order that the trial court may have an opportunity to consider this case without prejudice as a single legal offense, with whatever pertinent matters of mitigation or aggravation that may be brought to its attention, instead of passing on it as one of two similar legal offenses, as was erroneously done;" adding that defendant should ask a jury trial the evidence is available to convict him, and "whatever the result of such reversal and remand, he could not then as now plausibly contend that the sentence received by him was the result of extraneous legal error, prejudicially though unintentionally, imposed on him by our courts in the joint hearing of the cases."

In the circumstances of this case the statement of this court in State v. Stephens, supra, 71 Mo. l. c. 536, seems peculiarly appropriate, viz.:

"We feel constrained to say that it would better have comported with the proper exercise of a sound judicial discretion, had the . . . judge permitted the withdrawal of the plea of guilty, and the entry, in its stead, of the usual plea. The law is not composed of a series of snares and pitfalls for the unwary, neither does it favor what Judge Bliss terms 'snap judgments.' "

It is our conclusion that in case No. 31789, the judgment of the circuit court should be set aside and the defendant discharged, since it is apparent that he is not guilty of the offense there charged. In case No. 31790 the judgment or ruling of the circuit court overruling defendant's motion to set aside the judgment and permit withdrawal of the plea of guilty should be revoked and defendant's said motion should be sustained, the judgment on the plea of guilty should be set aside and the defendant should be permitted to withdraw his said plea of guilty. The judgments in both cases are accordingly reversed and the causes remanded with directions to the circuit court to proceed as herein indicated. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.