**STATE of Missouri, Respondent,**

v.

**Samuel Norbert REESE, Appellant.**

**No. 54591.**

Supreme Court of Missouri,
En Banc.

July 13, 1970.

Rehearing Denied Sept. 14, 1970.

John C. Danforth, Atty. Gen,. E. Thomas Coleman, Jr., Asst. Atty. Gen., Kansas City, for respondent.

M. E. Stokes, St. Louis, for appellant.

ROBERT G. BRADY, Special Judge.

Defendant filed his Motion to Vacate Judgment under Criminal Rule 27.26, V.A.M.R. Following an evidentiary hearing the motion was denied. He appeals alleging the trial court erred in its ruling on his motion for the reason the record demonstrates a violation of Criminal Rule 25.04, V.A.M.R. By opinion of May 11, 1970, this court granted defendant the relief requested. That opinion was withdrawn and the matter again taken under submission.

Defendant was charged with the first degree murder of one Zagib while in the course of an armed robbery of a store and with the same offense as to one Krieger while in the course of an armed robbery of the Windsor Hotel. He was also charged with armed robbery. The record before us indicates that charge was related to one of the acts resulting in the deaths of Krieger and Zagib. However, by referring to the original file in the armed robbery charge we have determined it arose from the alleged robbery of one Russell. In 1952 defendant was tried for the Krieger killing, found guilty and sentenced to death. The other two charges were then nolle prossed; his conviction was set aside (see State v. Reese, 364 Mo. 1221, 274 S.W.2d 304 (1954)); and he was returned to jail in the City of St. Louis to await retrial. The nolle prossed charges were reinstated. By his request and with the consent of the state, retrial was assigned to the Honorable Robert L. Aronson who had presided at the first trial. As the date for retrial approached defendant was adamant in his refusal to enter a plea of guilty. Nevertheless, defendant's Exhibit C, a transcript of the proceedings, shows that defendant did plead guilty to all three charges.

The proceedings took place on two separate days. The transcript consisting of twenty-two pages contains only two questions directed to the defendant by the court bearing on the issue before us. Those were: "Now, Samuel Reese, have you heard what Mr. Block just said that you withdraw your plea of not guilty and that you desire to plead guilty? MR. REESE: (No answer) THE COURT: I have to hear an answer. You must speak aloud. In other words, it is your desire to plead guilty on these three charges? MR. REESE: Yes." The transcript of the proceedings held on this occasion is entirely silent as to any other efforts to determine if defendant's plea was voluntarily made

with understanding of the nature of the charges against him.

The transcript discloses that defendant entered his pleas as above stated on Tuesday, April 4, 1955, and on that day was sentenced to life imprisonment for the Krieger murder; Case No. 396. The trial court recessed the proceedings until Thursday, April 6, 1955. Upon resuming, the court heard from the circuit attorney and defense counsel as to suggested sentences, and dwelt at length upon his reasons for the sentences in Cases 573–D and 574–D; respectively the murder of Zagib and the armed robbery of Russell. At the conclusion of its remarks the trial court asked if there were any reason why sentence should not then be pronounced. The transcript discloses his attorney stated: "I want the record to show that defendant requests that he be sentenced in accordance with the pleas of guilty." The trial court then announced a sentence of life imprisonment for the Zagib murder (Case 573–D) and ordered the sentence to run consecutively. At the same time it announced a term of 75 years for the armed robbery charge. At the conclusion of the court's statement of the sentences, the record discloses the circuit attorney asked whether the armed robbery sentence would run consecutively. The court stated: "I don't think it is too material."

For the purpose of showing defendant's general mental condition at the time of sentencing in 1955, evidence consisting of testimony given in the 1952 trial by Drs. Mary Ellen Steele and William Nelson, witnesses for the defense, and by Dr. Sassin, for the state, was introduced. From that it appears that Drs. Steele and Nelson tested defendant under procedures Dr. Sassin agreed were proper to determine his intellectual level and found his mental age in 1952 to be 12 years and 9 months. Dr. Sassin testified appellant was neurotic and psychopathic to an extent but that he was able to distinguish between right and wrong. At the evidentiary hearing defendant's expert medical witness testified defendant had an IQ of 65 which classified him as a mentally deficient person; a moron. He also testified that defendant's mental level had not improved since 1952 and would not do so. There was no contradictory evidence.

Defendant denied he was given any explanation of or warning or admonition concerning the nature of his charges or the consequences of his plea of guilty. He maintains he would not have entered his plea had he understood the nature of the charges and had the consequences of the entry of that plea been explained to him.

At the evidentiary hearing defendant denied he killed Krieger but admitted his participation in the armed robbery in which Krieger was killed. He was asked if he participated in the armed robbery during which Zagib was killed and if he killed Zagib. He denied doing either act. He was then asked if he wrote a letter to Judge Aronson dated Feb. 15, 1968. He answered that he had and identified the letter as being in his own handwriting. The following then occurred: "Q This does refresh your recollection? A That does not say I killed George Zabig (sic). MR. STOKES: Could you give me a date on that letter? MR. BANTLE: It is dated February 15, 1968. A You did not ask me what I said, you asked what I did. Q (Mr. Bantle) I asked you, first of all— A I wrote the letter, I did indeed. THE COURT: Mr. Reese, you will not argue with counsel, you will have a chance to make any explanation you care to make. A All right, Sir. (Document handed to the witness by counsel for the Plaintiff.) A I see that. Q (Mr. Bantle) Mr. Reese, my question to you was whether or not you had participated in the killing of Mr. George Zagib and I believe you answered you had not? A I did not participate in the direct killing, no." Later the following portion of the letter was read to him and he acknowledged he wrote the following: "* * * 'I was not a principal in the killing of John Krieger nor in the wounding of Officer Johnson, only

in that of George Zagib, and in the Windsor Hotel incident elevator operator Crump, notwithstanding I pleaded guilty to all these offenses. If such things can ever be atoned for, as the Law implies, who sentenced a man to imprisonment for them, I feel seventeen years here, four of which awaiting death, should suffice for the one man I have killed and the other I have once seriously hurt'; * * *.'" Later the state was asked if it was going to offer the whole letter and stated it was not. The following then occurred: "MR. STOKES: I see. I want to put into evidence, so the entire letter is before the Court, State's Exhibit Number 1, and I offer it at this time. THE COURT: Any objection? MR. BANTLE: Yes, for the reason it contains many matters that are hearsay, immaterial and irrelevant. I have not offered the letter, I have marked it and the defendant confirmed he did write and say the things I wanted to establish. THE COURT: May I see the Exhibit? MR. BANTLE: Surely. (Document handed to the Court by counsel for Plaintiff.) THE COURT: The offer of State's Exhibit Number 1 by the defendant in evidence will be refused on the grounds it contains statements that are self-serving and hearsay. You may proceed."

Defendant cites Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), contending that decision requires reversal of this judgment. We cannot agree. In Crego v. State, Mo., 447 S.W.2d 550, and State v. Roach, Mo., 447 S.W.2d 553, this court held Boykin and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), applicable only to those defendants whose guilty pleas were accepted after April 2, 1969. See Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16. We rule this case on Missouri law.

Criminal Rule 25.04, in effect in this state since January 1, 1953, forbids acceptance of a plea of guilty without a determination first being made the plea is voluntarily made with understanding of the nature of the charge. This rule is but a codification of case law in this state which has long required the trial court to protect the rights of an accused. See State v. Stephens, 1880, 71 Mo. 535, l.c. 536. The case law interpretations of the rule are too well known to require extensive repetitive statement in this opinion. See Drew v. State, Mo., 436 S.W.2d 727; State v. Sayre, Mo., 420 S.W.2d 303; Mooney v. State, Mo., 433 S.W.2d 542; Crosswhite v. State, Mo., 426 S.W.2d 67, l.c. 70; State v. Mountjoy, Mo., 420 S.W.2d 316; State v. Roach, supra. Neither will it serve any useful purpose to further dwell upon those or other similar cases in an attempt to rule or to distinguish the instant appeal by what is held therein. Each case must stand upon its own merits.

■ In essence, a plea of guilty is a confession in open court and like a confession made out of court it should be received with caution and never so unless it is fully and voluntarily made with understanding of the nature of the charge or charges. State v. Edmondson, Mo., 438 S.W.2d 237. The law favors the trial of all criminal cases and the greater the offense the greater is the reluctance of the courts to accept a plea of guilty. State v. Hardy, 339 Mo. 897, 98 S.W.2d 593. In State v. Williams, Mo., 361 S.W.2d 772, this court held: "Certainly in a case where the punishment may be death, the court should proceed with care, cautioning the defendant as to the gravity of his admission and making sure that he voluntarily and understandingly desires to enter a plea of guilty. See 14 Am.Jur. 951, Criminal Law, Sec. 271; see also 22 C.J.S. Criminal Law § 422(5), p. 1172; 4 Wharton's Criminal Procedure 767–769, Sec. 1900; 110 A.L.R. 228 Annotation." It has been held that the right of defendant to be fully advised of the consequences of entering a plea of guilty to each charge exists apart from any statutory provision or court rule. See cases collected in the Annotation following 97 A.L.R.2d 549, l.c. 552.

We are here confronted with an attempt to withdraw a plea of guilty to two charges of murder and one of armed robbery by a defendant characterized as a person of very low intelligence whose admitted mental age was 12 years 9 months; who even by the state's evidence was shown to be neurotic and psychopathic to an extent. Since he presided at the earlier trial, these facts were known to the trial judge who accepted the plea without any attempt to interrogate defendant to arrive at facts upon which he could base the determination the plea was voluntarily made with understanding of the nature of the charge. There was no attempt made to determine if his counsel, who was present and easily available for such inquiry, had explained or conversed at all with defendant in regard to such matters. Compare State v. Williams, supra; see State v. Mountjoy, supra. Defendant was not even asked if he was guilty. Compare State v. Blaylock, Mo., 394 S.W.2d 364. Neither was there any inquiry of defendant into the facts of the occurrences leading to the charges placed against defendant. Compare State v. Arnold, Mo., 419 S.W.2d 59.

In addition, there is the fact that the sentences run consecutively. As a result of the imposition of the life sentence following his earlier trial, defendant may be held to have known his punishment for murder could be that severe, but there is no indication he knew that the sentences for those charges and for the armed robbery could be consecutively imposed. Certainly this is an element about which he should have been advised. See State v. Bursby, Mo., 395 S.W.2d 155; State v. Holland, Mo., 411 S.W.2d 181. The court was ambiguous as to whether the sentence for armed robbery was to be served consecutively and it is extremely doubtful the matter could have been clear to defendant. By reference to the original files we have determined the armed robbery sentence does not specifically provide that it is to be served consecutively. However, that would be the result due to the manner in which the sentences

were imposed on Thursday, April 6, 1955. See Section 546.480, RSMo, V.A.M.S.; State v. Harris, 336 Mo. 737, 81 S.W.2d 319; State v. Hare, 331 Mo. 707, 56 S.W.2d 141; Ex parte Durbin, 102 Mo. 100, 14 S.W. 821; State v. McClanahan, Mo., 418 S.W. 2d 71.

We are then confronted with that portion of the letter written by defendant and read into evidence. The state contends there can be no "manifest injustice" within the meaning of Rule 27.25 because by that letter defendant has admitted he killed Krieger and Zagib. The defendant is equally adamant the failure of the trial court at the evidentiary hearing to require the state to introduce the whole letter or to allow defendant to do so constitutes reversible error. We do not fully agree with either contention. The letter is totally silent as to Case 574–D, the armed robbery. As to Krieger's murder, Case 396, we need not rule whether the letter was properly excluded. This for the reason that, as to Krieger, the only confession contained in the letter is that, as admitted in his oral testimony, defendant took part in the armed robbery during which Krieger's death occurred. To deny defendant's request to withdraw his plea as to that murder on the grounds he later admitted it (Drew v. State, supra) would be unjust. Defendant did not directly admit Krieger's murder. He admitted participation in the robbery and thus, in contemplation of law and by the terms of Sec. 559.010, RSMo, V.A.M.S., that admission constitutes an admission of murder. To hold that a person of an admitted moronic intelligence with the other mental complications as shown by the state's evidence is capable of understanding such a legalistic matter is unwarranted and unjust. We do not hold that every person of such a level of intelligence is per se unable to understand that an admission of an armed robbery during which a man was killed may constitute an admission of that man's murder. If a proper inquiry is made under Rule 25.04, it may well be established that he does under-

stand it and still desires to enter his plea. In this case no such inquiry was made and this record must be taken as being totally devoid of any indication that this man with an admitted intelligence level of 12 years and 9 months could understand such a matter. Neither is it significant there was an instruction given in defendant's first trial which dealt with the effect of the fact Krieger's murder occurred during the course of a robbery. That instruction informed the jury that if a homicide occurred during a robbery, the robbery stands in lieu of deliberation and premeditation and the jury would be warranted in finding the defendant guilty of murder in the first degree and should so say in their verdict. Again, inquiry under a proper compliance with Rule 25.04 may well have demonstrated that the existence of this instruction during the trial gave defendant such knowledge to the effect an admission of participation in the robbery was an admission of murder, but there was no such inquiry made. The mere existence of such an instruction at an earlier trial could not support, in and of itself, the decision defendant understood that admission of participation in a robbery constitutes an admission to a first degree murder charge of a man killed during that robbery. This is particularly so in view of defendant's limited mental capabilities, when defendant specifically denies he killed the man, and when he was never charged with that robbery.

▮ This appeal does not present a question of "substantial compliance" as that term has been used in matters involving the rules governing the acceptance and withdrawals of pleas of guilty. What is here involved is a total lack of any attempt at compliance with our rules. Before accepting these pleas of guilty the trial court must be held to have had in mind defendant's known low intelligence level, the severity of the sentences that could be imposed for murder and armed robbery, and the possibility the sentences could run consecutively. Having those matters in mind during a proceeding occupying part of two days and affording ample and repeated opportunity for the trial court by the slightest exertion to ascertain the voluntariness of defendant's plea and his understanding of the nature of the charges, the lack of any compliance with Rule 25.04, supra, compels us to hold the trial court abused its discretion by not ruling defendant should be allowed to withdraw his pleas of guilty and have a trial upon the merits as to Cases 396 and 574–D; the murder of Krieger and the armed robbery of Russell.

Defendant's request to withdraw his plea as to Case 573–D, the charge against him for the murder of George Zagib, presents a far different situation. To rule that request for relief does require a ruling upon whether the trial court correctly refused to admit the entire letter into evidence when offered by defendant. We believe the correct rule upon the matter is found stated in 29 Am.Jur.2d, Evidence, Sec. 535, as taken from the cases there cited, to wit: "When a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy, including any exculpatory or self-serving declarations connected therewith." While it is difficult to conceive of any exculpatory matter negating defendant's clear and unequivocal statements in the letter that he was a principal in Zagib's murder and the reference to the "one man I have killed", we cannot say such matter could not exist. Neither can we say the letter could not contain other matter bearing upon the confession which, while perhaps not rising to the degree of negating defendant's confession, yet may explain it or otherwise bear upon it.

The difficulty is that defendant never indicated the presence in the letter of other matter bearing upon his confession; never

expressed the contention the letter contained matters which refuted or exculpated the portion read into evidence by the state. Neither did defendant, by attempting to introduce only some portions of the letter, so indicate; defendant sought to introduce the entire letter. The letter was not read as an offer of proof, so we do not have it before us and cannot tell whether it in fact contained exculpating (albeit self-serving) or explanatory declarations. It is true that, as appears from that portion of the transcript set out in this opinion, the trial court looked at the letter before it made its ruling, but we do not know whether the trial court then ascertained the letter did not contain matter which refuted, explained or exculpated the confession or whether it searched the letter for self-serving matters and finding them refused admittance on that ground. The memorandum filed by the able trial judge is totally silent on the matter and there is no way we can ascertain upon which basis it proceeded when it denied admittance.

■ The defendant's failure to make any statement giving the court any indication there was exculpatory material in those portions of the letter not read into evidence and his failure to read the entire letter as an offer of proof so that we could now rule upon the matter are circumstances which prevent us from convicting the trial court of error as to its ruling. We are cognizant that under a state of circumstances such as shown to here exist defendant could be said to have failed to bear his burden of proof and the matter could be ruled upon that ground. A more thoughtful examination of the matter convinces us it is one which in essence necessarily involves credibility; a matter which should be first determined by the trial court. When is defendant to be believed; when he wrote this letter containing the confession as to Zagib's murder (considering that confession in the light of any exculpating matter defendant can show the rest of the letter contained), or when he testified he did not kill Zagib or even participate in the robbery during which that death occurred? For this reason, and due to the extra care which our courts have always exercised in matters of this nature, we hold the interests of justice require that defendant be given an opportunity to present any exculpatory matter contained in the letter. As to Case 573–D, the charge of Zagib's murder, we remand to afford defendant that opportunity and in order that we might have the benefit of the trial court's determination of the credibility issue.

Defendant also contends that a person with his mental level could not have the capability to understand the nature of the charge placed against him regardless of what explanation was given him. Thus he urges that it would be impossible to consider his plea as voluntarily entered within the meaning of Rule 25.04 regardless of what attempts at compliance with that rule were made by the trial court. We have held these pleas of guilty should not have been accepted, but that to accept them in Case 573–D could not be manifestly unjust in the event the alleged confession remained unexculpated and is to be believed. Such a ruling renders unnecessary determination of the point raised by defendant who nowhere contends he was unable to understand what he was doing when he wrote the letter nor that, at the time of entering his pleas, he was insane or otherwise laboring under any legal disability which would have prevented him from going to trial or required the trial court to refuse to accept his plea.

■ It is equally unnecessary to rule upon defendant's allegation the trial court incorrectly refused to admit into evidence and consider seventeen items of offered proof. If the confession is to be believed and remains unexculpated by other portions of the letter, then no manifest injustice within the meaning of Rule 27.25 could possibly result from denial of defendant's request to withdraw his pleas regardless of any errors the trial court may have made.

The judgment is reversed and the cause remanded to the trial court with directions

that defendant be granted permission to withdraw his pleas of guilty and to have a trial upon the merits as to the charges placed against him in Cases 396 and 574–D. As to Case 573–D, the charge of the murder of George Zagib, we remand to the trial court for a further evidentiary hearing and finding in accordance with the views expressed herein.

HENLEY, C. J., and FINCH, J., concur.

DONNELLY, MORGAN, and HOLMAN, JJ., concur in result.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.

SEILER, Judge (concurring in part and dissenting in part).

It may be that failure to comply with Rule 25.04 is satisfied by subsequent proof that defendant is in fact guilty, but I doubt it. As the majority opinion points out, there was here "a total lack of any attempt at compliance with our rules" at the time the pleas were accepted. I would, therefore, reverse and remand as to all three cases. I believe Rule 25.04 is sound and should be scrupulously observed. I think it is more important to the administration of justice in the long run and will bring about greater respect for the courts and thereby, hopefully, increased respect for the rule of law in all levels of our society, to insist on strict compliance with Rule 25.04, than it is to require compliance with it only in cases where defendant does not subsequently admit guilt.

In a way Rule 25.04 and Rule 27.25 are in conflict. One imposes careful scrutiny and explanation before accepting a plea; the other, it turns out, permits its disregard if defendant is guilty. The effect is to undermine Rule 25.04 and I do not believe this is sound.