The STATE, Respondent, v. WATSON, Appellant.

31   361
92a ¹460

1. The evidence of an accomplice is admissible, yet his evidence should be received with great caution, particularly when uncorroborated.
2. A letter, written by the defendant after his arrest and before trial, in relation to confessions made by an accomplice, is admissible in evidence against him.
3. A general verdict on an indictment with two counts is good. If either count will sustain the verdict it must stand. Where there are two counts and one of them bad, the verdict will be supported by the judgment.
4. As to the minimum of punishment for burglary and larceny under the statute. (R. C. 1855, p. 574, § 19.)

## Appeal from Linn Circuit Court.

Appellant was indicted at the August term, 1859, of Chariton circuit court for burglary and larceny. A change of venue was awarded to Linn circuit court, when defendant was put upon his trial. At the trial, a letter written by defendant to the sheriff of Howard county, in relation to certain confessions that were said to have been made by a man named Price then confined in Howard jail, said sheriff of Howard county, Boyd McCrary, having identified the letter, it was offered in evidence, to which defendant objected, but it was admitted by the court. Frederick Price testified that he was accomplice in the burglary, and larceny and detailed some of the facts connected therewith. The first instruction given at the instance of the State placed the minimum of punishment at three years. The jury rendered a general verdict assessing the defendant's punishment at three years in the penitentiary.

*Davis* and *Ryland*, for appellant.

I. The first instruction given for the state was not the law and may have misled the jury in their verdict. Had the jury found defendant guilty as charged in the first count of the indictment, five years' imprisonment is the least period for which he could be sent to the penitentiary; and if they had found him guilty as charged in the second count, twelve years is the shortest period for which by law he could be imprisoned. (R. C. 1855, p. 574, § 18, 19.) The verdict is wrong. It does not respond to the issues in the cause, in this, to-wit: It should have stated which count the indictment the prisoner is guilty under; it should state the degree of burglary he is guilty in; it should state, . guilty of larceny, whether of petit or grand larceny; and being the result of misdirection on the part of th court, should be set aside on the motion in arrest. The indictment charging two degrees of burglary and two grades of larceny, the one grade felony and the other not, determinable only by the

verdict, there could be no sensible judgment rendered in the cause upon this general finding; and under the nineteenth section of the statute above cited, these several offences may be charged in the same count of an indictment. (See The State v. Smith, 16 Mo. 550.)

II. The third and ninth instructions asked by the defendant were improperly refused by the court. In cases of felony no conviction ought to be had upon the testimony of an accomplice, without he is corroborated by other evidence in some point material to the issue. (22 Pick. 397; Commonwealth v. Bosworth, 1 Greenl. § 380; Roscoe's Crim. Ev. 154–8; 2 Phillips on Ev.; Cowan & Hill's Notes, 395, and cases cited; 2 Russell by Greaves (as the result of all the cases), 968; 1 Phillips on Ev. 41; The People v. Davis, 21 Wend. 312; People v. Whipple, 9 Cowen, 710; 2 Carr & Payne, 411.) The tenth instruction asked by the defendant and given by the court does not cure the error of the court in refusing the third and ninth instructions; while that instruction admits the infamy of the accomplice and attempts to guard the jury against his doubtful character, yet permits the jury to find the prisoner guilty upon that testimony alone without corroboration. (Farlan's case, 8 Carr & Payne, 106; Dyke's case, 8 Carr & Payne, 261; Birkett's case, 8 Carr & Payne, 732; Wilk's case, 7 Carr & Payne, 272; Addis' case, 6 Carr & Payne, 388; Webb's case, 6 Carr & Payne, 595; State v. Ray, 1 Green, Iowa, 316; Iowa Dig., tit. Accomplice, p. 16.)

*Knott,* (attorney general,) for the State.

I. The ε : id and ninth instructions asked by the defendant were properly refused. The evidence of an accomplice, though un corroborated, may be sufficient to convict. It is for the jury to say whether they attach sufficient credit to his statements to f nd a conviction upon them in the absence of confirmation, and if they in weighing the probabilities of his testimony think him worthy of belief, a conviction supported alone by such evidence is properly legal. (1

Hale P. C. 305, Atwood's case; 2 Leach C. C. 521, Jones', case; 1 Campbell, Hasting's case; 7 C. & P. 153, Costillo's case; 1 Denio, 83; Davis' case, 21 Wend. 309; State v. Cunningham, 31 Maine, 355; Commonwealth v. Bosworth, 22 Pick. 397; 2 McLean, 431; ib. 225.)

Napton, Judge, delivered the opinion of the court.

The most important question presented by the record in this case is the one raised by the refusal of the court to give the third and ninth instructions asked by the defendant. These two instructions are substantially the same, and declare the law to the jury, that the evidence of an accomplice, uncorroborated as to a matter material to the guilt of the defendant, is not sufficient to authorize a conviction. These instructions were refused, but the court declared in the tenth instruction, that "the evidence of an accomplice is admissible, yet his evidence uncorroborated as to matters material to the issue ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

There seems to be some inconsistency in the rules laid down by text writers in relation to the testimony of accomplices. It is conceded, with great uniformity, that a conviction based upon the uncorroborated testimony of an accomplice is legal. As he is a competent witness, it follows as a consequence that his testimony, if credited, will authorize a jury to convict, although unsupported by another witness. But it is the practice in England, and probably in this country where judges are still entrusted with the duty of charging the jury on the facts as well as the law of the case, to advise juries to acquit where the prosecution rests on the sole and uncorroborated testimony of the accomplice. This practice, however, appears to depend somewhat upon the discretion of the judge. It will be found, upon examining the cases, that it is usually, if not exclusively, confined to cases where the prosecution is sought to be supported by the sole testimony of the accomplice, or where there is an entire absence of any

other testimony tending to implicate the party on trial. In cases where there is testimony introduced for the purpose of corroborating the evidence of the accomplice, in a matter implicating the defendant, an instruction to the jury not to convict, unless they are satisfied that the statements of the accomplice are corroborated, is not usual. The strength of the corroborating evidence is left to the jury.

It may be doubted whether an instruction of this character would be proper here under any circumstances. If a conviction is legal upon the sole evidence of the accomplice, with what propriety can the court tell the jury that such a conviction is illegal? We can appreciate the motives which induce the English judges to give such directions to juries, when we consider the multitude of capital offences there, and the consequent disposition to prevent convictions, attended with punishments so enormously disproportioned as they sometimes are to the offence, unless upon the clearest and most conclusive evidence. They therefore are entrusted with a discretion which is generally and rightly exercised on the side of humanity. But under our practice, where the interference of the judge with the province of the jury is carefully interdicted by statute, the instruction given by the circuit court in this case would seem to be not only more consistent with the general rules of evidence, but conforming more closely to the restrictions imposed upon the bench by our statutes.

But even under the English practice, the instructions numbered three and nine, asked by the defendant, would not have been proper under the circumstances of this case. The case is not one, in which a conviction was asked upon the sole testimony of the accomplice. There was other testimony in the case, directed to the purpose of fixing the complicity of the defendant in the crime. If the evidence was competent and relevant to this purpose, it was not for the court to pass upon its sufficiency, regarding the matter as one of discretion on the part of the judge. That discretion, according to the authorities cited, was properly exercised.

The court went as far as the law and the circumstances warranted, in putting the jury on their guard against the unsupported testimony of a witness who admitted himself to be implicated in the crime.

In this connection, it is proper to notice the testimony of Mrs. Topping, a witness for the State, in relation to seeing Price (the accomplice) with money shortly after the robbery. This evidence was objected to, because it had no tendency to implicate the defendant. But we do not understand that the State may not offer evidence corroborating the statements of the accomplice, although such corroboration may not go so far as to implicate the party on trial. Such evidence is un-doubtedly competent if in other respects unobjectionable, and it is relevant upon the same principle that the demean-or of the accomplice himself on the stand and the intrinsic probabilities and consistency of his story would be in affect-ing his credibility before the jury. It is undoubtedly true that the confirmatory evidence should go to some matter which connects the prisoner with the charge, and this evi-dence of Mrs. Topping did not go to that extent. But it was competent as far as it went, and evidence is not to be exclu-ded because it fails to make out the whole case. It had a tendency to confirm the truth of the accomplice's testimony as to his reception and disposition of a portion of the stolen money. It had no tendency to injure the defendant before the jury, except so far as they might be induced to credit an entire statement, a part of which only was proved to be true. But the jury was fully guarded on this point by the instruc-tion which the court gave them, and we cannot see how the evidence, even if it was admitted to be irrelevant, could have in any way prejudiced the defendant.

The objection to the introduction of the defendant's letter to the sheriff of Howard county is clearly untenable. The letter was competent, and its relevancy is quite apparent. Its weight and importance was a matter entirely for the jury.

One of the witnesses for the State, (Applegate,) in descri-bing the money taken from the clerk's office on the night of

the 29th of March, 1858, stated that there were two "one hundred dollar bills," on the old Bank of the State of Missouri. There was proof that a bill of this denomination— that is, a one hundred dollar bill—was received from the defendant in the latter part of the ensuing winter or spring of 1859. The bill thus received was produced and exhibited to the jury. It was a bill upon the Bank of Missouri, but one of the new issues of the bank, after its re-charter, and was objected to on this account, and it is assigned for error here that the bill was allowed to go to the jury.

Testimony is not to be rejected as incompetent because it fails to prove all it is introduced to establish. In one view of the facts in evidence, this proof concerning the bank note tended to implicate the defendant; in another view it made in his favor. In either respect it was competent, and it was for the jury to determine in what light the evidence should be regarded. If Applegate was mistaken, as he might have been, in his recollection that the note was one of the old issues of the bank, the relevancy of the testimony excepted to is evident; but if Applegate was not mistaken, then the production of the note, and its appearance upon inspection to be one of the new issues of the bank, operated in favor of the defendant. It was simply a failure of proof on this point on the part of the State. The note produced was of the denomination described—it was upon the bank described—but it was not issued at the time described. Now it was for the jury to weigh the probabilities as to Applegate's being mistaken or not. If the court had excluded the note from the jury, the defendant, it would seem, would have had more cause to complain than he would by its admission. The whole facts were submitted to the jury concerning the note, and it was for them to reconcile the conflicting probabilities, and give the testimony such weight, in favor or against the defendant, as their judgment dictated.

A point is made here upon the first instruction given by the court for the State—that the minimum of imprisonment declared in the instruction is below that which the statute

has fixed.   This objection is founded on a misconstruction of the statute.   The nineteenth section of the third article of the statute, which prescribes the punishment for the double offence of burglary and larceny, does not affix any minimum to the additional punishment which is allowed to be inflicted on that which is annexed to the commission of burglary alone.   The maximum is five years, but there is no minimum—the punishment for the double offence may therefore be as low as three years and a fraction of time over—which may be one day, one hour, or one minute.   Practically and substantially we may say the minimum is three years, as the instruction complained of declares.

That provision of the statute which makes two years as the smallest duration allowed for imprisonment in the penitentiary, has no application to the proper construction of this nineteenth section.   The limitation of the punishment for burglary alone being placed at three years, the provision alluded to prohibiting a sentence for a shorter period than two years is complied with, and the additional punishment inflicted by the nineteenth section may be any length of time not exceeding five years.

But we would not be understood as saying, that if this construction of the statute was wrong and the minimum had been placed in the instruction below the limit allowed by the act, it would be any ground for reversing the judgment.   It is said, that such an instruction might induce a jury to find a verdict of guilty, which, if the punishment was properly explained to them, they would be unwilling to find.   But we are not at liberty to presume that juries will disregard their duty.   Their business is to find the issue of guilty or not guilty, and the propriety of the punishment declared by the statute is not submitted by them, and, of course, ought to have no influence upon their determination of the issue they are sworn to try.   If such influences are sometimes perceivable in verdicts, it is certainly no ground of complaint that in this case all temptation to yield to them was removed.

The jury had a right, in this case, to find a general verdict, and the objection that it was not specified upon which

count the verdict was based is not tenable. If either count will sustain the verdict, it must stand. Where there are two counts and one of them is bad, the verdict will be supported by the judgment.

Judgment affirmed; Judge Ewing concurs. Judge Scott absent.