STATE OF MISSOURI, Respondent, v. GEORGE P. McLAIN, Appellant.

**St. Louis Court of Appeals, February 18, 1902.**

1. **Criminal Law:** MALICIOUS DESTRUCTION OF PERSONAL PROPERTY: STATUTORY CONSTRUCTION. Section 1959, Revised Statutes 1899, covers all willful, malicious injuries to any kind of personal property belonging to another, and includes the destruction of a "threshing machine."

2. ———: ———: CRIMINAL LAW: INDICTMENT. And such acts are indictable at common law, and the present statute is simply declarative of the common law in that respect.

3. ———: PRINCIPAL AND ACCESSORY. Doing malicious mischief is a misdemeanor, and any person who takes part in its prosecution is a principal and actual perpetrator of the act rather than an accessory.

4. ———: EVIDENCE: DEFENDANT'S REPUTATION MAY BE IMPEACHED WHEN HE TAKES THE STAND. When the defendant, in a criminal prosecution against him, takes the stand in his own behalf, he is subject to attack like any other witness, and the State may prove his bad reputation.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Wilson Cramer* for appellant.

(1)   Defendant's motion to quash should have been sustained.   Section 1959, Revised Statutes, entitled, "Destruction of fruit and ornamental trees," etc., which the State invokes in support of the information, has no application.   (2)   The offense charged in the information consists of two separate and distinct acts:   "The putting and placing, and causing to be

put and placed, certain and divers, large pieces of iron concealed within certain sheaves or bundles of wheat," and the causing of "the said bundles of wheat and the said pieces of scrap-iron to be run through the said threshing machine with great speed, force and violence." (3) Placing the pieces of iron in the sheaves or bundles of wheat standing in shock in the field could not possibly result in injury to the wheat or the owner, nor is it so charged. (4) The gist of the offense is the injuring, breaking and partially destroying the threshing machine by causing "said bundles of wheat and the pieces of scrap-iron to be run through the said threshing machine with great speed, force and violence."

*Thomas D. Hines* for respondent.

(1) Malicious mischief was indictable at common law. 14 Am. and Eng. Ency. of Law, p. 8; People v. Smith, 5 Con. (N. Y.) 253; People v. Moody, 5 Park. Crim. (N. Y.) 568; Commonwealth v. Wing, 9 Pick. (Mass.) 1; Snap v. People, 19 Ill. 79; State v. Wilson, 3 Mo. 125. "Malicious mischief includes all malicious physical injuries to the rights of another which impair utility or materially diminish value." 2 Wharton's Crim. Law (8 Ed.), sec. 1067. (2) Mr. Kelley says, "A conviction may be sustained on the evidence of an accomplice alone, there being no rule of law against it. The courts usually caution the jury of the danger of finding a verdict on such testimony," etc. Kelley Crim. Law (Ed. 1892), p. 242 sec. 380. (3) Mr. Greenleaf says, "The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. It has sometimes been said, that they ought not to believe him, unless his testimony is corroborated by other evidence; and, without doubt, great caution in weighing such testimony is dictated by prudence and reason. But there is no such rule of law; it being expressly conceded that the jury may, if they please, act upon

the evidence of the accomplice, without any confirmation of his statement." 1 Greenleaf on Ev., sec. 380; Hughs on Crim. Law, sec. 3172; Atwood's case, 1 Hale P. C. 304-305; Jones's case, 2 Leach C. C. 521.

GOODE, J.—The defendant was convicted of the malicious destruction of a threshing machine by causing a boy, who was his ward, to hide pieces of iron in the shocks of wheat on the farm of a neighbor of the defendant, by the name of Thompson, knowing that said wheat would be cleaned by the thresher, and intending that the machine should be injured or ruined by the iron being carried through it along with the bundles of wheat in which it was concealed.

A motion to quash the information was filed and overruled and this ruling is assigned for error, the theory of the assignment being that section 1959 of the Revised Statutes of 1899 affords no basis for a criminal proceeding for malicious injury to a threshing machine or other similar property, as it only provides against the destruction of fruit and ornamental trees, shrubs or other growing things on inclosures, enumerated in it, or others not enumerated but generically the same. But the last clause of the section embraces in its provisions the willful destruction or injury of any goods, wares, merchandise or other personal property of another, which clause was added to the statute by an amendment to be found in the Session Acts of 1875.

The proper construction of the statute since the amendment was made, is that it covers all willful, malicious injuries to any kind of personal property belonging to another, and that the legislative purpose in amending it was to broaden its scope so as to protect all classes of property from destructive acts inspired by spite or wantonness. Such acts are an indictable offense at common law in this country, and the present statute is declaratory of the common law in that respect. 2 Wharton on Criminal Law (2 Ed.), sec. 1066, et seq. and notes;.

State v. Watts, 48 Ark. 56. We find the statute is a good foundation for the charge.

It is contended there was a failure of proof as to some of the acts stated in the information as a substantive part of the offense. We quote the information to show what these were:

"Now comes T. D. Hines, prosecuting attorney in and for Cape Girardeau county, Missouri, and upon his oath of office and the affidavit of James Thompson, gives the court to be officially informed and charges that George P. McLain at the county and state aforesaid, on or about the twenty-fourth day of July, A. D. 1899, willfully, unlawfully and maliciously did injure and break and partially destroy a certain 'Russell Separator,' threshing machine, the personal property of one Belle Elbacher, then and there being, by then and there putting and placing and causing to be put and placed, certain and divers large pieces of scrap-iron concealed within certain sheaves or bundles of wheat belonging to the said James Thompson, with intent, then and there, to injure and break the said machine, and then and there willfully, unlawfully and maliciously did cause the said bundles of wheat and the said pieces of scrap-iron to be run through the said threshing machine with great speed, force and violence, then and thereby breaking, injuring, and partially destroying, the cylinder and concave of the said threshing machine, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State."

Appellant's contention in regard to the deficiency of evidence to uphold the verdict is, that there is nothing to show or tending to show defendant *caused the pieces of iron to be run through the threshing machine*, as he was not present at the stacking or threshing of Thompson's wheat and had nothing to do with it directly or indirectly.

It appears that the iron was concealed in the sheaves of wheat by a boy named Vernie Ramsey, who was a nephew of the defendant's wife, and had lived in their home for about

State v. McLain.

eight years. He was also a nephew of James Thompson, the owner of the wheat. Some time prior to the institution of the prosecution, the boy had become unfriendly to his uncle, the defendant, and had gone to live with another uncle, William Minton, who, it seems, was appointed his guardian in lieu of the defendant. The pieces of iron were put in the wheat during the month of July, 1899, and the information was filed nearly a year afterwards on the affidavit of James Thompson.

There was no testimony and not a single circumstance tending to prove the guilt of the defendant, except the testimony of the boy Vernie Ramsey, who swore he was coerced into hiding the iron in the wheat by the command of the defendant, and the latter's threats to whip him if he didn't. He says his uncle broached the subject to him some time before the act was perpetrated and brought it up afterwards on several occasions, finally telling him one morning if he did not do it that day he would stripe his back from one end to the other. Through fear of the impending punishment, the boy says he took the pieces of iron from a pile of scrap-iron in a granary the following night, carried them to the wheat field and hid them in the sheaves. McLain admits he was on bad terms with Thompson, but that circumstance furnishes but slight, if any, motive for the commission of the crime with which he is charged. His motive must be found, if at all, in a statement of the boy that the defendant said to him he understood the Elbachers were going to thresh Thompson's wheat before they did his, and if they did he would know how to fix them. In point of fact, the defendant's wheat was threshed some time before Thompson's and this evidence as to motive is certainly very weak.

But the uncorroborated testimony of an accomplice, while it is to be guardedly received, is held sufficient to sustain a conviction. State v. Jones, 64 Mo. 391; State v. Watson, 31 Mo. 361.

Ramsey's testimony was unquestionably competent, and we find the court gave an appropriate instruction to the jury to receive it with great caution and not to convict on that testimony alone unless fully satisfied of its truth, or unless it was corroborated by other evidence in the cause.

As Ramsey's testimony was admissible and as the jury had the right to return a verdict of guilty based on it alone, if they were fully convinced of its truth, it follows there was evidence tending to prove the defendant caused the iron to be run through the threshing machine with force and violence, breaking, injuring and partially destroying the cylinder, as charged in the information, unless appellant's argument that, in order to have been guilty of causing this result, he must have been present and assisted in the threshing. But this reasoning runs counter to the whole theory of the criminal law in regard to the causal connection which an accused must have sustained to a criminal act to render him guilty of it; which as we understand it, is that the result held to be a crime must have been the natural consequence of some act which the accused performed with the intention that it should produce such a result and adapted to produce it. It is not required that the accused should have personally done every act or taken every step leading up to a catastrophe which the law denounces as an offense, to be guilty of its commission; but it is only required that he should intentionally set in operation a cause or agency adequate to accomplish the crime and which finally did accomplish it. The case stated by Blackstone, of a party setting a spring-gun with the intention of thereby killing or wounding some one, when, if some one was killed or wounded by the gun, the person who originally set it was criminally responsible, although the person injured himself caused it to fire, is an illustration.

Doing malicious mischief is a misdemeanor and any person who took part in its prosecution is a principal—an actual perpetrator of the act rather than an accessory. And a party

may be guilty of a felony done, though he was not actually present when the crime was consummated; as one who lays poison for a person who takes it and is killed (though he was absent when it was taken) is a principal in the first degree. 1 Wharton on Criminal Law (10 Ed.), sec. 207, and cases cited in the notes. There is the case, too, of a party who maliciously turns out a wild beast intending to kill any one whom the animal may attack; and other instances are given in the section cited of individuals being made criminally responsible for their acts though other agencies intervened between the acts and the crimes of which they were construed to be the cause. In that able treatise, it is said that a party who places poison in such a position that in the ordinary course of things it is likely to be unconsciously and non-negligently taken by passers-by is liable for the consequences. The principle involved in the above illustrations should govern in the disposition of this case. Crimes sometimes arise from mere negligence on the part of an individual, and how much more should one be held responsible for the intentional consequences of his act! If the defendant caused the iron to be concealed in Thompson's wheat with the malicious purpose of damaging or destroying Mrs. Elbacher's separator, knowing that in the natural course of events the wheat would be run through the separator with the iron in it and thereby injure the machine, and the injury actually transpired in the manner contemplated, then it was caused by the defendant and was intentionally caused by him and he is criminally liable. Any other construction of the law would afford immunity to mischievous and malicious persons for many acts which the policy of the law is to punish as crimes. Various agencies can be set in operation which will ultimately result in the wrongs designed to be guarded against by criminal statutes, without the perpetrator having anything more to do than to give the original impulse, and if this impulse was the direct and proximate cause of the final criminal result, he deserves and should receive punishment.

The instruction of the court on this point was unobjectionable, we think, and fully advised the jury as to the facts they must find in order to convict the defendant. Said instruction is as follows:

"The court instructs the jury if you believe and find from the evidence that the defendant at the county of Cape Girardeau, and the State of Missouri, at any time within a year next before the filing of the information herein, did willfully and maliciously injure, break and partially destroy a certain separator threshing machine, the property of one Belle Elbacher, by putting, placing and causing to be put and placed divers large pieces of scrap-iron concealed in certain sheaves or bundles of wheat belonging to one James Thompson, with the intent to injure and break the machine, and did willfully, unlawfully and maliciously cause said bundles of wheat and said pieces of scrap-iron to be run through said threshing machine with great speed, force and violence, thereby breaking, injuring and partially destroying the cylinder and concave of said threshing machine, you will find the defendant guilty and assess his punishment by imprisonment in the county jail for a term not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.

"The court instructs the jury that, if you believe and find from the evidence that the defendant did not himself put the pieces of iron in the sheaves or bundles of wheat, yet if he caused or had the same put there, in the manner as set out in the information, and a certain separator and threshing machine was injured as charged in the information, you will find the defendant guilty as he stands charged."

A number of other instructions were given which seem to have fully covered the case.

A point is made that the prosecution is malicious because based on the affidavit of James Thompson, an unfriendly neighbor of the defendant, made nearly a year after the crime was committed. That point is without merit, for it is suffi-

cient that the information was filed within a year and it could be properly based on the affidavit of any citizen. Besides, it appears Ramsey never disclosed the facts about the offense until just before the arrest.

Neither was there any error committed in allowing the State to prove the bad reputation of the defendant. The latter took the stand in his own behalf and was then subject to attack like any other witness. State v. Walker, 98 Mo. 95.

While the testimony on which this defendant was convicted is very unsatisfactory to our minds and leaves us with a strong doubt as to his guilt, two juries passed on it and reached the same verdict, and as we can not substitute our opinion for theirs, and find no error in the record, we are compelled to order that the judgment be affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.