STATE OF MISSOURI, Respondent, v. ALBERT GREEN, Appellant, No. 41557—224 S. W. (2d) 111.

Division Two, October 10, 1949.

Rehearing Denied, November 14, 1949.

*Ivan H. Light* for appellant.

*J. E. Taylor,* Attorney General, and *Gordon P. Weir,* Assistant Attorney General, for respondent.

■■■ WESTHUES, C.—Albert Green filed four motions in the Circuit Court of Jackson County, Missouri, asking the court to set aside four life sentences or for leave to withdraw pleas of guilty in all four cases. The motions were denied and Green appealed to this court.

The State in its brief says that if appellant's motions are to be treated as motions to vacate the judgments, then appellant filed them too late. The judgments were entered March 17, 1930. The motions were filed at the March term, 1948. The State says that if appellant's motions are to be treated as a proceeding in coram nobis, then there is nothing for review because no motion for new trial was filed after the court denied the motions. The motions were heard before the Honorable Thomas J. Seehorn who was the same judge that presided at the time appellant's cases were disposed of in March 1930.

Appellant complains because Judge Seehorn made statements during the hearings on the motions about what he remembered about the time when the pleas were entered by Green.

We have determined to decide this case on the merits without ruling the questions raised by the State and also . ignoring entirely the remarks and statements made by Judge Seehorn as to what he remembered about the cases when they were before him in 1930. Under the code this case is here to be reviewed de novo. Mo. R. S. A. Section 847.114(d), Laws, 1943, p. 387; House v. Santa Fe Trail Transp. Co., 217 S. W. (2d) 382.

The facts may be stated as follows: In February 1930, four charges were filed in the Jackson County Circuit Court against appellant Green. One charge was kidnapping under Section 4415 R. S. Mo. 1939, and three were charges of robbery in the first degree with a dangerous and deadly weapon under Section 4453 R. S. Mo. 1939. The maximum penalty on the kidnapping charge was ten years' imprisonment and the death penalty was the maximum on .the robbery charges. The record disclosed that Green entered a plea of not guilty on February 14, 1930, on all charges. The cases were set for trial for March 8, 1930, and on that day they were reset for trial on March 10 and then passed to March 17 on which day Green withdrew his plea of not guilty and entered a plea of guilty. The record further showed that the court assessed punishment on each charge at life imprisonment. Green was then taken to the penitentiary where he has since been confined.

The evidence taken at the hearing on the motions disclosed that a few years ago Green filed a habeas corpus proceeding in the Circuit Court of Cole County, Missouri. It was admitted in this court that Judge Blair of that court corrected the sentence on the kidnapping charge by reducing the sentence.

The relief Green seeks in this proceeding is to have the court find that he entered a plea of guilty to the kidnapping charge and to none other. He asks that if the court does not deem such relief proper then to permit him to withdraw his pleas of guilty as shown by the record and to reinstate the pleas of not guilty entered February 14, 1930. Green's complaint is that he entered a plea of guilty on the kidnapping charge only and that he was led to believe and was advised by his own attorney that the punishment on that charge could be the death penalty by hanging; that he entered the plea of guilty because he was afraid that he would be sentenced to death if he stood trial.

Mr. Page, the Prosecuting Attorney in 1930, and T. A. Milton, the defendant's attorney, are dead. It was these attorneys who Green says advised him about the death penalty on the kidnapping charge.

Since the sentence for kidnapping has been corrected and the defendant has long ago served that sentence in full, we shall devote our attention to the question of the verity of the record on the other sentences. Green was present at the hearing on the motions and testified. From his testimony we learn that he was arrested in the state of Kansas shortly before he was brought to Jackson County, Missouri, on the charges above-mentioned; that there was a charge against him in Kansas for which the punishment could be life imprisonment; that while in custody in Kansas he talked with his attorney Milton. Note a portion of his evidence.

"Q. (By Mr. Light) 'Was there any talk about the State of Missouri sending you back to the State of Kansas for treatment over there if you failed to arrive at an agreement here?'

"A. 'Well, the State of Kansas turned me over to Missouri to hang.' "

\* \* \* \* \* \* \* \*

"A. 'I remember I was trying to plead guilty and take a life sentence in Kansas to keep from coming back to Missouri, yes, sir.'

"Q. 'Now, this article says here you had your attorney then, T. A. Milton?'

"A. 'T. A. Milton, yes, sir.'

"Q. 'That was February 5, 1930?'

"A. 'He come to me over in Kansas.'

"Q. 'So you obtained your attorney, Mr. Milton, while you were still in Kansas awaiting extradition, isn't that right?'

"A. 'I hadn't given Mr. Milton a nickel.'

"Q. 'He was there and your wife was there?'

"A. 'Yes, sir.' "

The judgments and sentences on the robbery charges cannot be disturbed on the theory that Green received a greater punishment than he was led to believe by the state officers or by his own attorney. According to his own evidence he was anxious to plead guilty in Kansas and take life imprisonment rather than go to Missouri where he might receive the death penalty. He further testified that in Missouri he agreed, and on the advice of his own attorney, to enter a plea of guilty with the understanding that he would receive a life sentence. In the following cases cited by Green the court found that the defendant had been sentenced to a larger term than he understood or was led to believe he would receive on a plea of guilty. The cases are not, therefore, like the one before us now. See State v. Hovis, 353 Mo. 602, 183 S. W. (2d) 147; State v. Cochran, 332 Mo. 742, 60 S. W. (2d) 1; State v. Harris, 336 Mo. 737, 81 S. W. (2d) 319. In State v. Hare, 331 Mo. 707, 56 S. W. (2d) 141, in addition to the fact that Hare had no attorney, he received a sentence in excess of that recommended and also entered a plea of guilty to one charge of bigamy of which, under the facts in the case, he could not have been guilty.

We must also find against Green on his theory that he entered a plea of guilty to kidnapping only and that he was led to believe that the other charges would be dismissed. Neither do we believe that Green was led to believe that the officers were insisting on the death penalty on the kidnapping charge and not on the robbery charges. There were three first degree robbery charges against Green for which the death penalty could have been assessed. Green knew this and further knew while he was in custody in Kansas that there was a demand for the death penalty in Missouri. Again we turn to Green's own evidence to support this conclusion.

"Q. 'Did you see an article in the Kansas City Star on February 5, 1930 entitled, "Loses Life Trade, Albert Green comes to Missouri where death penalty will be asked for a crime career. Kansas gives him up. Offer to plead guilty and take life imprisonment is rejected in Wyandotte County." Did you see that article?'

"A. 'Yes, sir.'

"Q. 'Where is Wyandotte County?'

"A. 'Kansas City, Kansas, across the river.' "

\* \* \* \* \* \* \* \*

"Q. 'Did you see an article in the Kansas City Star on February 2, 1930 entitled, "Hang Bandits. Page will ask death of bandits who admit robbery series and kidnapping. It depends on Kansas." And another one in the Kansas City Journal-Post on the same date, "Missouri and Kansas eager to try Green. Police

844

here plan to demand rope for highway robbery. Still in jail across the line.'' Did you see that article?'

 ''A. 'I probably seen them all. I don't remember what date on all of them.' ''

So Green knew the officers intended to ask the death penalty for him on the robbery charges. Our conclusion is that Green's present theory is wholly an afterthought which occurred to him while serving in the penitentiary. Note his evidence.

''Q. 'When did you learn they could not have given you more than 10 years?'

''A. 'About 1945 or '44, somewhere around there.'

''Q. 'How did you happen to learn it?'

''A. 'A convict in the penitentiary that knew law and had the law books.'

''Q. 'Was the same mistake made in his case or in the case of another convict up there?'

''A. 'Well, another convict down there. He had two fifty year sentences running consecutively for kidnapping and the Cole County Court reduced it to 10 years and released him.' ''

Edgar Wilcutt, the police officer who was the victim in the kidnapping, testified that he was present when Green entered his plea of guilty. This witness stated that to the best of his recollection Green entered a plea of guilty on each of the charges and received a number of life sentences. He also testified that all of the officers connected with the case are now dead except the judge and the witness. Green cited the cases of State v. Dale, 282 Mo. 663, 222 S. W. 763; State v. Harris, 336 Mo. 737, 81 S. W. (2d) 319, and the cases above-mentioned. These cases hold that before the record in a criminal case of this nature can be disturbed, the defendant must have been misled or under some misapprehension at the time the plea of guilty was entered. No such finding can be made in this case.

Green was represented by an able attorney with whom he advised while charges were pending; this attorney was present when Green entered his guilty plea. It was in evidence that the attorney Milton at the time had poor eyesight. However, the punishment assessed was just what Green says he expected. The result desired by Green was accomplished; he escaped the noose and that is all he desired. He offered to plead guilty in the state of Kansas and take life for fear he would hang in Missouri. The Missouri officials were demanding that penalty. In view of the result Green has no complaint that he was not well represented.

The order of the trial court denying any relief on the motions must be and is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, J.,* and *Tipton, P. J.,* concur; *Leedy, J.,* concurs in result.