STATE OF MISSOURI, RESPONDENT, v. WILLIAM E. SARGENT, APPELLANT.
—256 S. W. (2d) 265.

St. Louis Court of Appeals. Opinion filed March 17, 1953.

*Gilbert Weiss* for Appellant.

*William J. Geekie* and *Jasper R. Vettori* for Respondent.

RUDDY, J.—Appellant was charged by way of information, filed in the St. Louis court of Criminal Correction, with unlawfully taking and agreeing to take and receive from Harry E. Favers the sum of $8.60 as interest for the forbearance and use of $25.00 for the period February 11, 1949, to May 20, 1949. A jury was waived and the case was submitted to the court. Appellant was found guilty by the court and his punishment was assessed at sixty days in the City Workhouse and a fine of $250.00. After an unavailing motion for new trial, appellant was sentenced and has appealed. The offense charged is usury, a misdemeanor, and comes within the provisions of Section 563.800 R. S. Mo. 1949, V.A.M.S.

Appellant at the time of his arrest was doing business as "Acme Brokerage Company" and "Acme Collection Service." He has

operated the Acme Brokerage Company since 1936. He formerly operated a loan company organized in 1938 as a corporation under the name "Acme Loan & Investment Company." This corporation has been defunct for seven or eight years. Appellant maintained an office in the Carleton Building in St. Louis and had two employees. He maintained two sets of books and records; one for the brokerage company and the other for the collection company.

Appellant has done business over the years with four or five individuals and one bank from whom advances of money were received by him to be paid out to borrowers. At the time of the transaction, forming the basis of the information, he had arranged loans, then active, totaling five or six thousand dollars. None of the loans exceeded $100.00 in amount or six months in duration. The average length of time the money was loaned was three months. One of the persons who supplied money for these loans was a former wife of the appellant, Marcella Sargent. She obtained a divorce from appellant in 1946, together with an alimony judgment of $200.00 per month, which he is now paying. In 1948, Marcella Sargent, having two or three thousand dollars in extra cash which she wanted to invest in small amounts, knowing the type of business appellant transacted, asked him "if he would mind" letting her make some of these loans. Appellant agreed to use some of her money in the making of loans. There was an understanding between them that Marcella Sargent would get, as interest, on a three month loan of $15.00 the sum of 40¢; on a $20.00 loan, 50¢; on a $25.00 loan, 60¢, and for anything over $25.00 she was to get a straight 8% or 60¢, whichever was greater, and on short term loans she was to receive a straight 1% per month. At the time of his arrest appellant had in his office 180 to 200 loans, totaling $3,000.00 to $3,500.00, belonging to Marcella Sargent. Written settlements of the account between appellant and Marcella Sargent were prepared in appellant's office and these settlements reported loans made and collections received for her. They covered the business of one to four days, depending on the volume transacted during the period. All settlements were paid in cash. If there was a credit due Marcella Sargent she received the money in cash from appellant. If the settlement showed an amount owing by Marcella Sargent, she paid appellant in cash. No checks were issued between appellant and Marcella Sargent. The explanation given for this arrangement was, that the bank charged four to five cents on each check. However, appellant did have a bank account in which he deposited all fees collected by him.

When a prospective borrower applied for a loan, appellant would prepare a form identifying the person who wished to borrow the money and would note his income, credit rating, and place of employment thereon. If Marcella Sargent approved the loan she would sign the form signifying her approval. Before any loan of her money

could be made it was necessary for appellant to obtain her consent. Whenever a loan was approved, appellant would have the borrower sign a form employing appellant as the agent of the borrower in procuring the loan and would have the borrower sign a promissory note payable to Marcella Sargent. If Marcella Sargent didn't have a sufficient balance in her account to pay the borrower, appellant would have her bring the necessary cash to his office. Marcella Sargent made regular visits to the office of appellant and sometimes made as many as five or six trips a day in connection with her transactions. Sometimes the business was transacted in her home. After a note, made payable to Marcella Sargent, was signed by the borrower it would be turned over to her, with an endorsement by appellant on the back of the note guaranteeing its payment. Marcella Sargent testified that she considered Mr. Sargent's guarantee a better security than common stocks—better than General Motors stocks.

All installments due on the notes were paid at the office of appellant where records of the payments were kept in a card file. At no time throughout the loan transaction did the borrower ever meet Marcella Sargent. Appellant had an arrangement with a bank in the State of Louisiana to lend money under a plan somewhat similar to the one he had with Marcella Sargent.

Appellant when asked, "* * * has your practice of getting money from the former Mrs. Sargent, and more lately from the bank at Bunkie, been because you yourself were financially unable to make those loans directly, or because you chose not to do it?" gave this answer, "Because I chose not to do it, because I was - - - doing that I would be, not doing it according to the way I figured the law to be." Appellant further testified that he had been very careful to examine the law at all times and that he obtained expert legal advice in connection with being a broker of loans.

Appellant's brokerage charge for procuring a $20.00 loan for three months was $6.40; for $25.00, $8.00; for $30.00, $9.60. This brokerage charge was always paid by the borrower directly to appellant. Marcella Sargent received no part of the brokerage charge. She knew a fee was being collected by appellant but "did not know exactly what his charges were."

Appellant has known the prosecuting witness, Harry E. Favers, since 1942 and had arranged a total of 20 loans for him. The first loan placed with Marcella Sargent in behalf of Favers was in December 1948. On February 11, 1949, Favers, then owing a balance of $16.80 on the loan made in December, applied to appellant for a new loan. Appellant told Favers that he would be required to make the payments due on his delinquent account and that appellant always insisted on the old account being brought up to date before he would arrange a new loan. In all previous transactions, all payments were made by Favers in the office of appellant, and whenever Favers was

delinquent in making his payments appellant would telephone Favers and request the payment due. On the same day Favers applied for the new loan he signed a promissory note payable to the order of Marcella Sargent in installments of $5.60 due on alternate Fridays beginning one month after date, until the amount of $25.00 had been paid. This note provided for interest at 8% per annum. At the same time he also signed the following agreement:

"Acme Brokerage Co.,                                    "1032
St. Louis, Mo.                                    February 11, 1949

"You are hereby employed as agent to procure a loan for the undersigned in the sum of $25.00 for a term of three months.

"I agree to pay you the sum of $8.60 for your services as my agent in the event that you procure this loan and further act as my agent in forwarding for me the payments to the parties making the loan should I desire that you forward same.

"Signed)   H. E. Favers

"Minimum Interest of
$.60¢ Is Included Above."

The promissory note when introduced in evidence had written across the face of it "Paid 4-22-49 M. Sargent." On the reverse of the note appeared the following:

"Payment of this note is fully guaranteed by
Acme Brokerage Company
per (Signed)  Wm. E. Sargent."

After Favers signed the aforementioned promissory note and agreement appellant handed him $8.20 "from a cash drawer right by the counter there in his office." Favers did not read the two documents and had never met and did not know Marcella Sargent. Favers never inquired where the money came from and dealt only with Mr. Sargent at all times. When making payments at appellant's office Favers would receive receipts showing what was paid. He testified that he did not keep these receipts because he "trusted the company."

Whenever a note was paid or was renewed by the execution of a new note, appellant did not give Favers the old note marked paid, but only returned to him the corner of the note containing Favers' signature and appellant would retain the balance of the note showing the payee and its terms.

A police officer testified appellant told him at the time of arrest that he had made the loan to Favers and that the charge of $8.60 was "for interest to make the loan." The appellant denied making these statements to the police officer, but did testify he tried to explain to the officer how he operated his business.

It was stipulated at the trial that the sum of $8.60 would exceed 2% a month on a $25.00 loan payable at the rate of $5.60 every two weeks, the first payment to begin one month after the loan was made.

Marcella Sargent testified that the note of February 11, 1949, was

paid off in April 1949, and that thereafter she made another loan to Favers.

The first contention made by appellant is that the scope of review in this appeal must be de novo on the record and cites the case of State v. Green, 359 Mo. 839, 224 S.W. 2d 111, as controlling on this issue. Article 1, Par. 22 of the Constitution of 1945 of the State of Missouri, provides in part as follows:

"* * * * in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, *whose finding shall have the force and effect of a verdict of a jury.*" (Emphasis ours.)

Section 546.050 R.S. Mo. 1949, V.A.M.S., provides:

"But the defendant and prosecuting attorney, with the assent of the court, may submit the trial of misdemeanors to the court, whose finding in all such offenses *shall have the force and effect of the verdict of a jury.*" (Emphasis ours.)

It will be noted that both the constitutional provision and the statutory provision permitting a trial before the court give to the finding of the court the same force and effect as if it were a jury verdict. In State v. Stanley, 217 Mo. App. 26, 273 S.W. 139, we held that the finding of the court contained in a judgment in a misdemeanor case has, pursuant to the above statutory provision, the force and effect of the verdict of a jury. We rule that this court must review this appeal in the same manner as it would if the verdict had been returned by a jury. To do otherwise would do violence to the plain dictates of the constitutional and statutory provisions which give to the finding of the court the same conclusiveness as if made by a jury. On an appeal, wherein a jury verdict is rendered, the rule is that if there is substantial testimony, which tends to support the verdict, it must be allowed to stand, unless reversible error was committed in the progress of the hearing. State v. Rusow, Mo., 106 S. W. 2d 429; State v. Decker, 326 Mo. 946, 33 S. W. 2d 958; State v. Henke, 313 Mo. 615, 285 S. W. 392.

In the case of State v. Green, supra, relied on by appellant, the defendant filed, at the March Term 1948, four motions asking the court to set aside four life sentences, entered March 17, 1930, or for leave to withdraw pleas of guilty entered in all four cases. The motions were denied. In the Supreme Court the State took the position that if the defendant's motions are to be treated as motions to vacate the judgments, then defendant filed them too late; that if the motions are to be treated as a proceeding in coram nobis, then there was nothing for review because no motion for new trial was filed after the court denied the motions. The court held that it had determined to decide the case on the merits without ruling the questions raised by the State and further held that under the Code, Section 510.310 R.S. Mo. 1949, V.A.M.S., the case was there to be reviewed de novo. It will be ob-

served that what the court had before it for hearing were after trial motions and not the trial of the case or cases on the merits. This distinction is important, because the constitutional and statutory provisions referred to above have no application to after trial motions and only apply to a criminal case when tried on the merits by the court, after a jury has been waived. In the Green case, supra, the Supreme Court, no doubt, recognizing that there was no applicable criminal statute for reviewing the testimony given at the hearings on the motions, applied the provisions of the Civil Code. In the case at bar, we have clear mandates, in the Constitution and in the statute, and they must be followed. We rule the Green case inapplicable. It now becomes our duty to determine if there is substantial testimony in the record to support the trial court's finding.

Appellant contends that there is not one scintilla of evidence in the record that appellant either charged or received any interest or exaction for the use of the loan. It is the theory of the appellant that he was not a lender of money, but was a loan broker acting merely as an agent for the borrower for the purpose of procuring a lender for Favers and of forwarding the payments, when made, to the lender, for which services he charged a commission. Appellant claims that a broker, acting as an agent for the borrower, may exact a commission from the borrower and that such exaction, in addition to the principal loan, does not render the loan usurious. He cites in support of this rule, Allen v. Newton, 219 Mo. App. 74, 266 S.W. 327, and cases cited therein. It is true that if the trial court sitting as a jury found appellant to be the agent of the borrower, then appellant should have been discharged. However, we find ample and substantial evidence in the record from which the trial court could have found that appellant was not the agent of the borrower, but was either the agent of his ex-wife, Marcella Sargent, or was acting for himself as lender. In our consideration of the case it wouldn't make any difference in which capacity (lender or agent of the lender) he operated, because the statute, Section 563.800 R.S. Mo. 1949, V.A.M.S., is applicable to every person and every agent of any person who shall take or receive, or agree to take or receive, directly or indirectly, by means of commissions or brokerage charges, or otherwise, for the forbearance or use of money any interest at a rate greater than two per cent per month.

The State introduced into evidence as "State's Exhibit A," the agreement of February 11, 1949, signed by H. E. Favers, and State's Exhibit B," the promissory note executed by Favers and made payable to Marcella Sargent. Appellant insists that the State, having introduced these two exhibits in its own case, embraced and accepted the documentary evidence completely repugnant to the theory of the State's case and the State is conclusively bound by this evidence. He charges that State's Exhibit A on its face shows that the agreement established appellant as agent of the borrower and that it completely

repudiates the theory of a loan and interest between Favers and appellant. Appellant cites State v. Dashman, 153 Mo. 454, 55 S.W. 69; State v. Dworkin, 307 Mo. 487, 271 S.W. 477; Cartello v. United States, 93 F. 2d 412; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S.W. 249; Schroer v. Brooks, 204 Mo. App. 567, 224 S.W. 53; People v. Cosad, 253 App. Div. 104, 1 N.Y.S. 2d 132. We have examined these cases and do not find any of them controlling in this situation.

Generally, one who introduces documentary evidence to support his contention vouches for its integrity and is conclusively bound thereby. However, in a prosecution for usury it is the duty of the State to present all the evidence surrounding the negotiations, including any and all documents executed, in order to show their connection with the transaction and in order that the entire proceedings may be examined. It must be remembered that the State has charged a usurious exaction of interest and may have the court examine all documents and papers with the view of determining whether they are genuine and, therefore, conclusive or whether they are mere subterfuges used to evade the usury laws. The court has the right and the duty to scrutinize every document and transaction in order to ascertain their true nature. To hold that the State is conclusively bound by its introduction of Exhibits A and B, would effectively prevent the prosecution of cases where usury has been concealed behind, what on the surface appears to be innocent documents. In Jones on Evidence, Third Edition, Section 855, it is said that:

"* * * * a party may offer in evidence a bill of sale or other instrument in writing, if it forms a part of the transaction in issue, and afterwards show that the instrument had its inception in fraud."

See also Peters v. Taylor, Ariz. Sup., 251 P. 446; Hoffman v. Hendricks, 21 Okl. 479, 96 P. 589.

The Nebraska Supreme Court in an analogous situation, said in Olmstead v. New England Mortgage Security Co., 11 Neb. 487, 9 N.W. 650, l.c. 652:

"The mere statement in a printed form furnished by the Corbin Banking Company that the borrower employed them as his agent to negotiate the loan, does not of itself conclude the parties, nor more than *prima facie* establish such agency. In fact, in most cases it is grounds of suspicion, as showing on the face of the application an attempt to evade the law. But the court will look at the entire transaction to determine the question of agency."

See also Clarke v. Havard, 111 Ga. 242, 51 L.R.A. 499.

It is the duty of the court to ascertain the actual facts and strip all instruments of camouflage and pretense. The court may determine from all the facts and circumstances whether the instruments are actually what they appear to be or are merely cloaks whereby excess

interest over the legal rate may be collected. Stewart v. Boone County Trust Co., 230 Mo. App. 120, 87 S.W. 2d 223. We, therefore, rule that State's Exhibits A and B were not conclusive on the State and are not conclusive of the case.

Except for State's Exhibit A, there was nothing to show that appellant was the agent of the borrower. All the negotiations for the loan by Favers were had with appellant. Favers had never met or had any dealings with Marcella Sargent. The money Favers received was paid to him out of a cash drawer in appellant's office. Appellant had the money on hand with which to make the loan. If this money belonged to Marcella Sargent, this fact was unknown to Favers. If it belonged to her it was there because of an arrangement made previously through which she engaged appellant to obtain loans for her. She confided in appellant and certainly displayed far greater confidence in him than is ordinarily reposed in the agent of someone else. From this the court could have found that if appellant was not the actual lender of the money he was acting for Marcella Sargent in the transaction. Hecker v. Putney, Mo. App., 196 S.W. 2d 442. It is not enough for Marcella Sargent and appellant to say that she got none of the brokerage charges and that she didn't know how much appellant was charging. The fact is she knew or at least should have known that a charge was being made. She knew that appellant in procuring these loans for her had to look to the borrower for his compensation. Even though she had testified that she didn't know appellant was making a charge, knowledge and consent on her part to exaction of such a charge may be implied from the previous marital relationship of Marcella Sargent and appellant and the fact that she paid him no compensation for his services. Brown v. Archer, 62 Mo. App. 277; Freedman v. Katz, 224 N.W. 325; 66 C. J. (Usury) Section 154, pp. 223-224. Actually no service was rendered the borrower in procuring a lender. The appellant had the money on hand. The fact is that appellant did nothing in the way of performing services for Favers. It is true that he guaranteed the payment of the note. This fact was not told to Favers and the court could have found that this was a device used for negotiating a loan actually made by appellant or was a part of an agency agreement with the lender.

It is undisputed that Favers went to appellant's office for the purpose of borrowing money. Whatever took place after that was the creation of appellant and was the result of an arrangement appellant had with Marcella Sargent. She had made arrangements with appellant for the rate of interest she was to receive. As stated above, Favers dealt only with the appellant and signed in blank such instruments as appellant presented to him and it is significant to note that the amount of the commission or brokerage charged by appellant depended upon the amount of the loan and its duration. If the amount charged the borrower by appellant was actually for services rendered,

why would the amount of the charge depend upon the duration of the loan, unless it was interest for the use of the money. The law is diligent to discern any artifice, device, or scheme to cover up usury and there can be no device or shift used to evade the law of usury behind which the court will not look in order to determine the real transaction. Webster v. Sterling Finance Co., 355 Mo. 193, 195 S.W. 2d 509. Lord Mansfield many years ago, in discussing the usury statute and referring to a transaction before him, said ''Where the real truth is a loan of money the wit of man cannot find a shift to take it out of the statute.'' Floyer v. Edwards, Cowp. 112.

It is obvious from the testimony given by appellant that he was trying to find a way to defeat the statute. We think the trial court had ample and substantial evidence before it to find that he had failed in this regard. The evil of taking advantage of persons in dire and necessitous circumstances is the very wrong which the legislature sought to prohibit.

It is true that much of the evidence considered above came from appellant or Marcella Sargent, but in examining the record to see if there is substantial evidence to support the court's finding we are not limited to the facts adduced by the State, but may also consider any evidence favorable to the State which was introduced by appellant or his witnesses. State v. Richardson, Mo. 36 S.W. 2d 944; State v. McGehee, 308 Mo. 560, 274 S.W. 70; State v. Bray, Mo., 246 S.W. 921; 23 C.J.S. Section 908, pp. 157, 158, as long as the evidence of the State and of the defendant is not contradictory, State v. McGehee, supra. We rule that the trial court had before it sufficient, substantial evidence from which it could find that appellant was guilty either as lender or agent of the lender.

Appellant makes the further contention that he cannot be found guilty as an agent of the lender because the information does not charge him with acting as the agent of the lender, and to convict him as such agent would constitute a complete variance of the proof with the information. He states that to convict him as an agent of the lender it is necessary that the information allege the agency. He further states that the information accuses him of directly making the loan as principal and not as agent. We must disagree with this contention. It should be pointed out that from an early date, it has been the rule with regard to misdemeanors, even those which are purely statutory, that all who participate in such offenses are principals, and must be charged as such. Reynolds v. Publishers; George Knapp & Co., 155 Mo. App. 612, 135 S.W. 103; State v. McLain, 92 Mo. App. 456; People v. Schultz, 134 N.Y.S. 293; 27 Am. Jur. p. 655. At common law there are no accessories in misdemeanors, either before or after the fact. All persons concerned therein, if guilty, are all to be treated as principals. Reynolds v. Publishers; George Knapp & Co., supra.

The information in the case at bar sufficiently alleged all the statutory elements necessary to constitute the offense of usury and it was unnecessary to allege the capacity in which appellant committed the offense as such an allegation would not be descriptive of the offense. True it is, that the information could have charged that appellant was the agent of the lender, but the failure to do so, especially in the case of a misdemeanor, is not error. The test of the sufficiency of an information is whether it contains all the elements of the offense as set out in the statute and sufficiently apprises the person charged of what he must be prepared to meet and whether it would be a bar to a subsequent prosecution for the same offense. We think the information in this case substantially meets this test. Additional authority for the position we have taken is that found in many cases holding that the same strictness and nicety is not required in drawing informations charging misdemeanors as is required in charging felonies. State v. Short, Mo. App., 228 S.W. 2d 15; State v. Granger, Mo. App., 199 S.W. 2d 896; State v. Jones, 237 Mo. App. 714, 164 S.W. 2d 85. We rule the information sufficient to convict appellant either as lender or as agent for the lender. Also see State v. Fenley, 309 Mo. 534, 275 S.W. 4.

At the conclusion of the case appellant requested the court to give a number of declarations of law among which was the following:

"The court further declares the law that a broker may make such charges for securing a loan as the parties may agree, and if the evidence shows that the defendant is or was an agent of the borrower, then he should be acquitted."

The court took the position that inasmuch as the case was tried without a jury it was unnecessary to declare the law and ordered the record to show the declarations merely filed. Appellant contends the trial court erred in not declaring the law when requested to do so and with this contention we agree. The declaration of law requested and as set out above was a correct declaration of the law and our examination of the other declarations requested indicate that all, with the exception of one, were correct declarations of the law and should have been given. Appellant cites in support of his contention the cases of State v. Martin, 230 Mo. 1, 129 S.W. 931, and State v. Stanley, 217 Mo. App. 26, 273 S.W. 139. Both are jury waived cases involving misdemeanors. Before commenting on these cases it may be well to show the purpose declarations of law serve in a jury waived case. In 64 C.J., Trial, Section 1035, pp. 1217, 1218, we find the following statement:

"The purpose of declarations of law, it has been said, is to show, for the information of the appellate court, the theory of law on which the trial court disposed of the case. In no other way can it be ascertained upon what theory of law the court determined the cause."

In Falvey v. Hicks, 315 Mo. 442, l.c. 454, 455, 286 S.W. 385, l.c. 390, the Supreme Court said:

"* * * it has been held that the purpose of declarations of law, in law actions tried by the court without a jury, is to advise the appellate court of the theory of law upon which the court nisi tried and ruled the action. * * * * the appellate court looks to the declarations of law, given and refused, only to ascertain the theory of the trial court respecting the law of the case."

It is just as important in a criminal case tried by a court without the aid of a jury to know the theory of law upon which the trial court ruled the action as it is in a civil action.

In the Martin and Stanley cases relied on by appellant, it was held that the trial court did not err in its failure to declare the law, because in neither case did the defendant offer and ask to be given any declarations of law. In both cases it was inferentially held that had declarations of law been requested, it would have been the duty of the trial court to give such declarations as correctly declared the law. Where declarations of law state correct principles, and there is substantial evidence on which to base them, and they are seasonably made, it is not only proper to give them, but the refusal to do so is error. 64 C.J., Trial Section 1048, p. 1221.

It is important in this case that we know the theory under which the trial court found appellant guilty. If the trial court, as the trier of the facts, found appellant was either the agent for the lender or was the lender, then its finding was correct. But if the trial court found that appellant acted as agent of the borrower, then the trial court should have discharged appellant and its failure to do so would be error. We have no way of knowing, from this record, upon what theory appellant was found guilty. If the trial court had given the declaration of law set out herein, then it would be presumed that he followed the law as declared and it would be obvious that he found appellant to be either the lender or agent for the lender, either of which finding would support the trial court's finding of guilt. It was error for the court to refuse to declare the law when requested to do so by appellant and we so rule.

Because of this error the judgment of the trial court is reversed and the cause is remanded for a new trial. *Bennick, P.J.,* and *Anderson, J.,* concur.