STATE of Missouri (Plaintiff), Respondent,

v.

Meredith L. WESTON (Defendant), Appellant.

No. 28972.

St. Louis Court of Appeals.

Missouri.

Feb. 15, 1955.

Drew W. Luten, Jr., Harry M. James, St. Louis, for appellant.

Earl Saunders, Festus, for respondent.

RUDDY, Acting Presiding Judge.

Defendant was charged by information with publishing obscene, lewd, licentious, indecent and lascivious pictures by projecting moving pictures on a screen before divers persons. The offense charged is a misdemeanor under Section 563.280 RSMo 1949, V.A.M.S. A trial by jury was had, resulting in a verdict of guilty as charged and a fine of $500 was assessed as punishment. The only point raised by defendant is that the trial court erred in overruling defendant's motion for a directed verdict and his alternative motion for a new trial. It is the contention of the defendant that the evidence is insufficient to sustain the verdict and conviction. This contention calls for a review of the evidence.

John Keasler and Buell White, employees of the St. Louis Post Dispatch newspaper, testified they were in the community of Maxville, Jefferson County, Missouri, on the evening of November 14, 1952. They entered a large room on the second floor of a building and, upon entering the room each paid an entrance fee of $3. The room was crowded and the estimated number of persons present was between 300 and 450, all of whom were men. A raised stage extended across one end of the room. Keasler and White saw a motion picture projector located in the room facing the stage and a motion picture screen located near the projector. They testified that it was a small screen and not the standard size, such as they have in a movie house. The screen operated like an ordinary window shade in the home. It was directly in front of the stage and above the level of the stage floor. The motion projector was approximately in the center of the room. Prior to the motion picture exhibition a stage performance with live participants took place.

Keasler further testified that he saw defendant on the stage and that "he was all around" and "moving around" the stage and the screen, "he seemed to be supervising what was going on," but he was not operating the motion picture projector. At another time in the testimony of this witness he said defendant was acting in a supervisory capacity on the stage and that "he was directing getting the motion picture under way." He further testified that the crowd became unruly and defendant "told them (the crowd) there was going to be *some* movies," (parenthesis ours), and that defendant *"assisted in getting the*

*screen ready."* He testified that defendant handled the screen and that he saw the defendant pass a can of film back to the man who was operating the motion picture projector. He said the operator of the projector apparently had no film and "perhaps three seconds later I saw him take the film out of the can"; that "almost simultaneously as I looked back there was film taken from a can." Several times in his testimony Keasler said he saw the defendant toss a can of films to the operator. He described the can as round and flat, and made of metal and he added that prior to this occasion he had seen cans or containers for motion picture films and knew their appearance. He testified that three short pictures were shown; that one of them was a travelogue picture depicting vacation life in the Ozarks and the other two films he described as very old films "blotchy but quite legible that dealt with men and women stripping nude and performing sexual acts."

Buell White further testified that he was a photographer for the St. Louis Post Dispatch for eleven years and that he saw a travelogue picture and a couple of indecent pictures of sex life and nude men and women shown in the hall that evening. When asked if he knew the defendant in the case, he answered "I have seen him." However, he couldn't be positive the defendant was there that evening. He did see a man "up around the stage" acting as a master of ceremonies. He further testified that he took a picture of the man he saw "up around the stage." He identified State's Exhibit A as the picture he had taken on the evening of the showing of the motion pictures and that it was a picture of the man who was acting as the master of ceremonies throughout the entire evening. The picture was admitted in evidence by the trial court and was shown to the jury. Defendant in his brief admits it was his picture.

William Sedivic testified that he was a very good friend of the defendant and knew him intimately for about five years. He had bought a ticket before the evening of the show for which he paid $3. He further testified that he was present throughout the entire performance and that Meredith Weston, the defendant, was on the stage talking and acting as the master of ceremonies the entire evening.

Henry Schneider testified that he was the operator of the bar on the first floor of the building where the pictures were shown. He rented the hall on the second floor of the building to a man who said "his name was Mr. Weston" for $20. He further testified that defendant was not the man who rented the building from him and that he didn't see the defendant in the building on the evening in question, adding, "if he was there, I didn't see him." On cross examination when asked, "You saw this man down in your building that evening, didn't you?" he answered "I don't know. I was too busy to tell who was who."

Defendant testified that he did not own any film or rent any film on the evening of November 14, 1952, and that he did not operate a motion picture projector that evening. In the cross examination he admitted he was present on the night of November 14, 1952.

■ In reviewing this evidence we must keep in mind that all who participate in misdemeanors are principals. There are no accessories in misdemeanors either before or after the fact, and all persons concerned therein, if guilty, are to be treated as principals. State of Missouri v. Sargent, Mo.App., 256 S.W.2d 265; Reynolds v. Publishers; George Knapp & Co., 155 Mo.App. 612, 135 S.W. 103; State v. McLain, 92 Mo. App. 456; 22 C.J.S., Criminal Law, § 81b, pages 145, 146.

■ The only question we have for determination is whether there was sufficient evidence to sustain the verdict of guilty. In passing on the sufficiency of the evidence, we take as true all the evidence favorable to the State and every reasonable inference to be drawn therefrom. Appellate courts do not weigh the evidence. State v. Jones, 363 Mo. 998, 255 S.W.2d 801; State v. Harmon, Mo., 243 S.W.2d 326; State v. Missey, Mo., 234 S.W.2d 777.

Defendant in his brief admits two of the films shown were obscene. We think the evidence was sufficient to show that the defendant aided, assisted and participated in publishing the indecent pictures as charged in the information. The evidence shows that he acted as the master of ceremonies throughout the entire evening and that he conducted these ceremonies from the stage. After the performance of the live participants was over, and the crowd became unruly he told the crowd there would be some movies, from which statement the jury could find that he was in charge of the show and a participant in the showing of the subsequent movies. The jury could also reasonably infer from this statement that he knew the nature of the show that would follow. There was sufficient evidence from which the jury could find that the defendant helped in the preparation for the showing of the movies. He assisted in getting the screen ready. There can be no doubt but that the evidence showed defendant was on the stage that evening acting, as some of the witnesses said, in a supervisory capacity. This testimony alone was sufficient for the jury to find that the defendant aided, assisted and participated in the showing of the indecent movies. In addition to the aforesaid testimony, the jury could have found that the defendant handed the operator of the motion picture projector the films which produced the indecent movies.

In the recent case of Satterwhite v. State of Texas, Tex.Cr.App., 273 S.W.2d 871, the facts are somewhat analogous to those of the instant case. Appellant was charged with engaging in the showing and exhibition of lewd and lascivious motion pictures. These pictures were exhibited in an annex to appellant's place of business. He had rented the place where the pictures were shown to another. The evidence showed that appellant witnessed the showing of the films. It was appellant's contention that the evidence was insufficient to show his connection with the exhibition of the lewd and lascivious motion pictures. He claimed that he had rented the building to another and had no knowledge that lewd and lascivious motion pictures or any other pictures were to be shown, and that after the showing began he did nothing to aid or encourage the showing of the pictures by the person who had rented the premises. In upholding the verdict of guilty the court said·

"The undisputed evidence from the standpoint of the state is that the offense was committed in the presence of many spectators in appellant's place of business and while he was conducting his business of selling beer in the same room. He saw the showing of the first film and the second; the intervening indecent exhibition and the third film, the showing of which was interrupted by the arrival of raiding officers. Not only did he fail to interfere, but at one time applauded.

\*      \*      \*      \*      \*      \*

"Appellant was present and continued to conduct his business, the guests of the stag party and spectators at the showing of the motion pictures evidently being his customers. Under these facts we do not agree that the renting of the premises for a two hour period without knowledge that the law was to be violated would relieve appellant of his responsibility as the owner in charge." 273 S.W.2d at page 873.

In the case at bar there is an abundance of evidence from which the jury could find that the defendant was in charge of the showing of the motion pictures on the evening of November 14, 1952.

It is our opinion when all of the evidence is considered, it was sufficient to support a verdict of guilty. The judgment is affirmed.

NOAH WEINSTEIN, Special Judge, concurs.